**Phillip C. TABBI, Peter Muserlian, Theodora E. Muserlian, and Daniel Cowin, Petitioners,**

**v.**

**POLLUTION CONTROL INDUSTRIES, INC., a Delaware corporation, Respondent.**

Court of Chancery of Delaware, New Castle County.

Submitted: Sept. 4, 1985.
Decided: March 7, 1986.

Wayne J. Carey, Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, for petitioners.

Lawrence A. Hamermesh, Morris, Nichols, Arsht & Tunnell, Wilmington, for respondent.

OPINION

BERGER, Vice Chancellor.

This is an appraisal proceeding pursuant to 8 *Del.C.* § 262 arising from the merger between Pollution Control Industries, Inc. ("PCI"), Advanced Horizons, Inc. and Tennyson Ventures, Inc. ("TVI") whereby TVI was merged into PCI and each PCI common stockholder was paid $2.65 per share. By the terms of a Stipulation and Order dated December 26, 1984, the parties have agreed that demands for appraisal for 86,-166 shares will be determined in this proceeding. However, PCI objects to the demand for appraisal with respect to approximately 55,000 additional shares of PCI. This is the decision on the disputed appraisal demands.

PCI mailed a proxy statement dated June 28, 1983 to its stockholders informing them that a special meeting would be held on July 29, 1983 at PCI's offices in West Caldwell, New Jersey at 10 a.m. to vote upon the proposed merger. The meeting was convened as scheduled, PCI's President read a prepared script, the polls were closed at 10:05 a.m., the votes were counted and the meeting was adjourned at 10:08 a.m. Of a total of 1,410,900 shares voting, 1,254,448 voted in favor of the merger and 153,677 shares voted against. The merger was consummated on the next business day, August 1, 1983.

The disputed appraisal demands and the basis for PCI's objection may be summarized as follows. First, PCI objects to a demand filed by Cede & Co. on behalf of Shearson Lehman/American Express, Inc. ("Shearson") with respect to 44,500 shares held beneficially on the grounds that the demand was untimely (the "Shearson Demand"). Second, PCI contends that a demand by Ecology Equipment, Inc. with respect to 2,000 shares is defective because the demand letter did not reasonably inform PCI of the stockholder's intention to demand appraisal (the "Ecology Demand"). Third, PCI objects to demands made by five individuals, with respect to a total of 5,500

shares, on the grounds that those individuals were not stockholders of record. Finally, PCI objects to claims made by nine beneficial owners with respect to 3200 shares where no demand was made.

In order to become entitled to the appraisal of one's shares, a stockholder must satisfy the requirements of 8 *Del. C.* § 262. The operative section for purposes of this decision provides:

> Each stockholder electing to demand the appraisal of his shares shall deliver to the corporation, before the taking of the vote on the merger ... a written demand for appraisal of his shares. Such demand will be sufficient if it reasonably informs the corporation of the identity of the stockholder and that the stockholder intends thereby to demand the appraisal of his shares. 8 *Del. C.* § 262(d)(1).

Prior to the 1976 amendments to the appraisal statute, a dissenting stockholder was required to make a written objection to the merger prior to the vote as well as a formal demand for appraisal after the merger was effectuated. That two-step procedure was simplified so that now a stockholder need only make one pre-vote demand. However, the purpose of the pre-vote notification—to give the corporation and its stockholders advance notice of the stockholder's intent to seek appraisal—remains the same. *Raab v. Villager Industries, Inc.*, Del.Supr., 355 A.2d 888 (1976); *Steinhart v. Southwest Realty and Development Co.*, Del.Ch., Civil Action No. 583 (Kent), Hartnett, V.C. (May 31, 1978).

The demand must be made by or on behalf of the record stockholder and the party seeking appraisal bears the burden of proving compliance with the requirements of § 262. *Carl M. Loeb, Rhoades & Co. v. Hilton Hotels Corporation*, Del. Supr., 222 A.2d 789 (1966). However, the statutory requirements are to be liberally construed for the protection of dissenting stockholders within the limits of orderly corporate procedures and consistent with the purpose of the requirements. *Raab v. Villager Industries, Inc., supra.*

Petitioners argue that these settled principles have been modified by the decision in *Weinberger v. U.O.P., Inc.*, Del.Supr., 457 A.2d 701 (1983). They contend that, since *Weinberger* liberalized the appraisal valuation process and limited the circumstances under which a stockholder may obtain relief through an entire fairness claim, "everything possible" must be done to allow stockholders to obtain an appraisal. Petitioners suggest that hypertechnical objections should be rejected out of hand and that the Court should look at the equities in deciding whether failure to comply with the requirements of § 262 deprives the stockholder of his appraisal rights. *Weinberger* addressed appraisal valuations, not the procedures by which a stockholder perfects his right to appraisal. As a result, I am not convinced that *Weinberger* changed the law applicable to this phase of the appraisal proceeding.

### 1. The Shearson Demand.

Petitioners concede that the Shearson Demand was delivered to PCI after the merger vote was taken but contend that this defect should be overlooked in light of the circumstances. The demand letter was prepared and finalized on July 27, 1983—two days before the merger vote. Shearson deposited the demand letter at an Emery Worldwide designated pick-up point at its offices in New York City in the late afternoon of July 27th for delivery the following morning. However, apparently through no fault of Shearson's, the demand letter was not delivered by Emery until July 29th—the morning of the stockholders' meeting. There is some dispute as to the exact time of delivery, petitioners claiming that the demand letter was delivered at 10:10 a.m. and respondent claiming that it was not delivered until 11:10 a.m. I am satisfied from the evidence that respondent is correct on this point although I am not sure that the one hour difference would alter the result inasmuch as the demand letter was late in any event.

Petitioners argue that two decisions of this Court support their position that, while it was technically late, the Shearson Demand should be allowed where the appraisal action will go forward regardless and the stockholders and their broker have taken all steps required of them to perfect the stockholders' appraisal rights. The relevant portion of *In Re Engle v. Magnavox Co.*, Del.Ch., Civil Action No. 4896, Brown, V.C. (April 21, 1976) dealth with the claim of Rev. Edward C. Brown, III ("Brown"), a beneficial stockholder who missed the stockholders' meeting at which the merger was approved because mechanical problems delayed his scheduled flight to the city where the meeting was held. The Court noted that Brown arose before dawn and drove several hours to get to the airport and that Brown came from Massachusetts to plead his case before the Court at the hearing to consider the appraisal demands. The Court concluded that Brown should not be deprived of his right to an appraisal considering his efforts and the fact that he was prevented from attending the meeting by reasons beyond his control.

In *Steinhart v. Southwest Realty and Development Co.*, *supra*, the Court allowed one of two late appraisal demands. Mr. Halperin, acting as agent for an investment club, and his wife, acting on her own behalf, sent demand letters two days prior to the scheduled meeting date by certified mail. However, both letters were late, having been misrouted by the postal service. At trial, the corporation produced no evidence that its proxy materials were mailed to all stockholders of record at least 20 days prior to the meeting, as required by the appraisal statute. Mr. Halperin conceded that point, but his wife did not provide similar testimony. The corporation's attempt to supplement the record after trial by way of an affidavit was denied.

In denying Mr. Halperin's appraisal claim and allowing his wife's, the Court enforced the requirements of the appraisal statute in an equitable manner. The Court noted that the corporation's objections to the appraisal demands were based on a "strict technical application of the law." *Id.* at 5. In the case of Mr. Halperin, the corporation established its technical compliance with the statute and the stockholder was held to the same standard. However, since the corporation did not make the necessary showing with respect to Mrs. Halperin's claim, it was not allowed to object to her demand on technical grounds. The Court observed that the equities were all in Mrs. Halperin's favor inasmuch as the post office was the cause of the delay.

■ I am not persuaded by *Engle* or *Steinhart* that the Shearson Demand should be allowed. It would appear that in *Engle* the Court was moved by the fact that the stockholder had gone to great effort to perfect his appraisal rights and failed due to circumstances beyond his control. Brown received notice only one week before the meeting and decided to attend in person because he was afraid that there was not enough time to make his objection by mail. He apparently traveled a considerable distance to attend the meeting but arrived too late because of mechanical problems on his flight.

The facts here are nowhere near as compelling. Although Shearson took steps to perfect its appraisal rights, it did not do any follow-up to assure that the demand had been perfected. A simple telephone call on the morning of July 28th would have revealed that Emery had not delivered the demand letter and, with one day remaining before the meeting, several reasonable alternatives were available to assure timely delivery of the demand.

The treatment of Mr. Halperin's claim in *Steinhart* supports respondent's opposition to the Shearson Demand. In both cases the stockholders chose apparently reasonable means of delivering their demand but the carrier failed to make delivery in a timely fashion and the claims were not allowed. Petitioners focus instead on *Steinhart's* treatment of Mrs. Halperin's claim. They suggest that here, as in *Steinhart*, respondent is seeking strict technical

application of the law without itself conforming to those standards. Specifically, petitioners point out that PCI was declared void on March 1, 1983 by the Delaware Secretary of State for failure to pay franchise taxes. There had been a dispute as to the amount of franchise taxes due and after that issue was resolved a Certificate of Renewal and Revival was filed on August 1, 1983. Petitioners do not and cannot argue that PCI's temporary void status had any bearing on Shearson's ability to make a timely demand. As a result, this case is not analogous to Mrs. Halperin's situation in *Steinhart.*

Based on the foregoing, PCI's objection to the Shearson Demand is sustained.

### 2. The Ecology Demand.

PCI's objection to the Ecology Demand is based upon the language of the demand letter, which states:

> This letter is to advise you that this date we have returned our proxy for the Special Meeting of July 29, 1983. Further, after our review, we feel that a detailed analysis be made regarding the price per share being offered.

Pursuant to 8 *Del. C.* § 262(d)(1) a demand for an appraisal must "reasonably [inform] the corporation of the identity of the stockholder and that the stockholder intends thereby to demand the appraisal of his shares." In applying this standard, the Court is not free to construct a demand, but an inartistically worded letter which, "by fair implication" constitutes a demand, will be held sufficient. *Abraham and Co. v. Olivetti Underwood Corporation,* Del. Ch., 204 A.2d 740, 742 (1964); *Carl Marks & Co. v. Universal City Studios, Inc.,* Del.Supr., 233 A.2d 63 (1967).

Thus, for example, a letter stating that the offered price was inadequate, that the stockholder believed that the value of the stock was more than three times what was offered and that the stockholder would

present data to support his opinion as to value upon request has been held to state an adequate demand for appraisal. *Bell v. Kirby Lumber Corp.,* Del.Supr., 413 A.2d 137 (1980). By contrast, a letter stating that the offered price was "most unrealistic" and that the stockholder would do everything in its power to prevent a "confiscation" of its property without due process was not considered an adequate demand. *Carl Marks & Co. v. Universal City Studios, supra.*

■ Bearing in mind that this statutory requirement is to be liberally construed for the protection of objecting stockholders, I find that the Ecology letter reasonably informed PCI that the stockholder wanted an appraisal. The letter would have served little purpose if it were not viewed as an appraisal demand. Although it does not expressly brand the merger consideration inadequate, the statement that a detailed analysis should be made regarding the offer price fairly implies that the stockholder was dissatisfied and was seeking an appraisal remedy.

### 3. Demands by Beneficial Owners.

Demands for appraisal by several beneficial owners * are opposed by PCI on the ground that the demands must be made by or in the name of a stockholder of record. *See,* 8 *Del. C.* § 262(a); *Raab v. Villager Industries, Inc., supra; Carl M. Loeb, Rhoades & Co. v. Hilton Hotels Corp., supra.* Petitioners recognize this requirement but argue that it should not be applied here because of purported deficiencies in PCI's proxy statement.

In *Raab v. Villager Industries, Inc., supra,* Delaware corporations were charged with an obligation to inform their stockholders as to how appraisal rights may be perfected:

> [H]enceforth [a Delaware corporation] shall have an obligation to issue specific

---

* Jeffrey H. Norensky, Pet-Mus Corp., Vito Cusumano—a/c/f Thomas F. Cusumano and

Charles Reynders, Jr. of Park Alexander & Co.

instructions to its stockholders as to the correct manner of executing and filing a valid objection or demand for payment under this Statute, as construed by Delaware courts, including: (1) the general rule that all such papers should be executed by or for the stockholder of record, fully and correctly, as named in the notice to the stockholders; and (2) the manner in which one may purport to act for a stockholder of record, such as joint owner, a partnership, a corporation, a trustee, or a guardian. *Id.* at 895.

PCI included in its proxy statement a summary of the provisions of § 262 as well as a copy of the statute.

Petitioners argue that PCI's disclosures were inadequate under *Raab*. Specifically, they say that the PCI proxy statement should have explained (1) the distinction between record and beneficial stockholders; (2) that demands must be executed by or for stockholders of record; (3) the manner in which one may act for a stockholder of record; and (4) the fact that stock held through a brokerage firm may be held of record by a nominee such as Cede & Co. Respondent points out that the appraisal statute defines the word "stockholder" to mean stockholder of record and that it is not PCI's burden to explain the manner in which the stockholder himself chose to hold his shares. Alternatively, respondent argues that the beneficial owners in question all knew or should have known that the demand had to be made by or for the record owner and that they were not stockholders of record. Thus, even if the proxy statement disclosures were inadequate, the appraisal demands should be rejected.

Neither the proxy statement or § 262 contains specific instructions as to the correct manner of executing and filing an appraisal demand. Inasmuch as the two items of information expressly required by *Raab* were omitted, it is not necessary to decide whether *Raab* requires the additional disclosures urged by petitioners as to the various types of stock ownership and the role of a depository such as Cede & Co.

The only question remaining is whether, in light of PCI's proxy statement deficiencies, the appraisal demands by non-record stockholders should be allowed.

*Raab* mandates that all doubt as to the sufficiency of a demand be resolved in favor of the stockholder where reasonably specific instructions are not provided by the corporation. However, it appears from the record that certain of the beneficial owners at issue recognized their status as beneficial owners and also realized that the appraisal demand must be made by or for the record stockholder. For example, Peter Muserlian, President of Pet-Mus Corporation, the beneficial owner, instructed Smith Barney, Harris Upham & Co. ("Smith Barney") to demand appraisal on behalf of the Pet-Mus shares. The broker made a timely demand, but, as it turns out, Smith Barney was not the record holder either. Given these facts, respondent argues that any disclosure deficiencies are irrelevant and the failure to make a demand in the name of the record stockholder is dispositive.

■ There is no question but that corporations should be entitled to rely upon their stock list in evaluating appraisal demands and it has long been recognized that a stockholder who chooses to hold his shares in street name bears the burden of exercising his stockholder rights through the nominee. *See, Salt Dome Oil Corp. v. Schenck,* Del.Supr., 41 A.2d 583 (1945). However, *Raab* recognizes that, in fairness to the stockholders, they should be given certain basic instructions to facilitate their compliance with the requirements of the appraisal statute. Even where the beneficial owners apparently knew that the demand had to be submitted by or for the record stockholder, the evidence does not establish that they understood the "manner in which one may purport to act for a stockholder of record...." *Raab v. Villager Industries, Inc., supra* at 895. Accordingly, PCI's failure to comply with *Raab* is not irrelevant and the demands by

these four beneficial owners will be allowed.

### 4. The Demand of Marilyn and Donald Brenner.

▉ Respondent concedes that these claimants were record stockholders as of the record date for the vote on the merger and that they filed a timely demand for appraisal. However, based upon PCI's stocklist, they no longer were stockholders of record as of the merger date. According to a letter submitted by Mr. Brenner's attorney, the Brenners were divorced sometime after July 27, 1983 and Mr. Brenner became the record owner of the shares in question. PCI's stocklist does not show Mr. Brenner as a record owner and there has been no suggestion that the Brenners, collectively or individually, transferred their stock into street name. The evidence does not establish that the Brenners were either record or beneficial stockholders as of the merger date and their demand for appraisal will not be allowed.

### 5. Claims by Persons Who Did not Demand Appraisal.

▉ Nine stockholders filed Information Forms with the Court indicating their desire to participate in this appraisal proceeding. However, there is no evidence that any of these stockholders submitted demands for appraisal and their claims are denied.

IT IS SO ORDERED.