**In the Matter of the Appraisal of ENSTAR CORPORATION, Respondent below, Appellant,**

**v.**

**Lucie SENOUF, and Prudential–Bache Securities Inc. for Margaret S. Earle, Claimants Below, Appellees.**

Supreme Court of Delaware.

Nov. 30, 1987.

Charles F. Richards, Jr., Samuel A. Nolen, (argued) of Richards, Layton & Finger, Wilmington, for appellant.

Michael D. Goldman, James F. Burnett (argued), Kathleen T. Furey, and Laurie A. Silverstein of Potter, Anderson and Corroon, Wilmington, for appellee Prudential–Bache.

Lawrence C. Ashby (argued) and Stephen E. Jenkins of Ashby, McKelvie & Geddes, Wilmington, for appellee Senouf.

Before CHRISTIE, C.J., MOORE and HOLLAND, JJ.

MOORE, Justice:

This appeal by Enstar Corporation (Enstar) presents issues relating to the perfection of stock appraisal rights under 8 *Del. C.* § 262 (1983) by persons whose shares are held in "street" or nominee names. Thus, we are required to address the definition of the term "stockholder" in Section 262(a).

Plaintiffs Lucie Senouf and Margaret S. Earle brought these consolidated appraisal actions in the Court of Chancery against Enstar following a merger between Enstar and Unimar Subsidiary, Inc. (Unimar). The plaintiffs' shares were registered in the name of a nominee, CEDE & Co., (CEDE), but their demands for appraisal were not made by or on behalf of the actual holder of record, CEDE. The Court of Chancery, nonetheless, ruled that plaintiffs' demands for an appraisal were valid since the corporation had "reasonable constructive notice" that plaintiffs' shares were held by a nominee. Thus, we confront the phrase in Section 262(a) that "the word 'stockholder' means a holder of record of stock in a stock corporation" for purposes of demanding an appraisal.

The statutory language, statutory history and prior judicial decisions all make clear that only a stockholder of record may demand an appraisal.[1] Accordingly, we reverse.

I.

On September 4, 1984 Enstar issued a proxy statement seeking shareholder approval of a merger with Unimar. The terms of the merger involved an exchange of Enstar shares for those of another company plus cash.

As required by Section 262(d), Enstar's proxy material specifically informed fiduciaries or custodians, agents and nominees of the manner by which each was to perfect an appraisal on behalf of a beneficial owner. It made clear that only a holder of record could demand an appraisal:

Only the holder of record of Common Shares or Preferred Shares (as the case may be) is entitled to seek appraisal of the fair value of the Common Shares or Preferred Shares (as the case may be) registered in such holder's name. The demand for appraisal must be executed by or for the holder of record, fully and correctly, as such holder's name appears on the holder's stock certificates. If the

---

1. Section 262 has been amended since this case was argued. The amendments do not affect the definition of a "stockholder" or the outcome of

this case, but they reinforce the requirement that *one seeking an appraisal must be a stockholder of record.*

stock is owned of record in a fiduciary capacity, such as by a trustee, guardian or custodian, the demand should be made in that capacity, and if the stock is owned of record by more than one person, as in a joint tenancy or tenancy in common, the demand should be made by or for all owners of record. An authorized agent, including one or more joint owners, may execute the demand for appraisal for a holder of record; however, such agent must identify the record owner or owners and expressly disclose in such demand that the agent is acting as agent for the record owner or owners.

A *record* holder such as a broker who holds Common Shares or Preferred Shares *as nominee* for beneficial owners, some of whom desire to demand appraisal, must exercise appraisal rights on behalf of such beneficial owners with respect to the stock held for such beneficial owners. In such case, the written demand for appraisal should set forth the number of Common Shares or Preferred Shares covered by it. Unless a demand for appraisal specifies a number of Common Shares or Preferred Shares, such demand will be presumed to cover all Common Shares or Preferred Shares (as the case may be) held in the name of such record owner.

## A. The Senouf Demand

Lucie Senouf, a French national residing in Morocco, owned 20,000 shares of Enstar. Her stock was held by Drexel Burnham Lambert Incorporated (Drexel), who in turn deposited the shares with the Depository Trust Company (DTC) for registration.[2] Consistent with its normal practice, DTC registered the shares in the name of CEDE, a partnership used by DTC solely as a nominee to hold the shares of its participants.

By a letter dated September 15, 1984 Phillipe Champy, acting under a general power of attorney, purported to demand an appraisal of Mrs. Senouf's stock. The letter specified that Mrs. Senouf owned 20,000 shares which were held in her account at Drexel.

It is undisputed that neither Mr. Champy nor Mrs. Senouf were stockholders of record of Enstar, and that Drexel held only 200 Enstar shares of record. No demand for an appraisal of Mrs. Senouf's shares was made by or on behalf of CEDE, the actual holder of record.

## B. The Earle Demand

Mrs. Margaret Earle owned 10,441 shares of Enstar, which were on account at Prudential–Bache Securities Inc. (Prudential–Bache). She specifically chose to have her shares registered in a "street name" in order to take advantage of her broker's "command account." Prudential–Bache deposited the shares with DTC which then registered them in the name of CEDE.

On September 24, 1984 Prudential–Bache demanded an appraisal of Mrs. Earle's shares in a letter signed (in facsimile) by Charles M. Karasek, a Prudential–Bache employee. It is undisputed that neither Mrs. Earle nor Prudential–Bache were the stockholders of record, and that the demand was not made by, or on behalf of, the stockholder of record, CEDE.

The Court of Chancery nonetheless held that the demands were effective, because Enstar had reasonable constructive notice that the Earle and Senouf shares were listed on the corporation records under the name "CEDE & Co." *In re Appraisal of Enstar Corp.,* Del. Ch., C.A. No. 7802, slip op. at 14 (July 17, 1986) [Available on WESTLAW, 1986 WL 8062].

## II.

### A. The Development of Section 262(a)

▮▮▮ The General Corporation Law explicitly details the mechanism for perfect-

---

**2.** The use of DTC and similar central security depositories is a common method for holding publicly traded securities. Such depositories serve their participant brokerage houses by providing a central storage facility for large numbers of stock certificates. This allows participants to buy and sell shares without the burdens of transferring certificates and reregistering shares in the name of the new buyer after each transaction. Whether a beneficial stockholder participates in a depository system is a matter between the beneficial stockholder and his broker, and is not a consideration for issuers.

ing appraisal rights. In its present form 8 *Del.C.* § 262(a) provides:

> (a) Any stockholder of a corporation of this State who has complied with subsection (d) of this section and has neither voted in favor of the merger or consolidation nor consented thereto in writing pursuant to § 228 of this title shall be entitled to an appraisal by the Court of Chancery of the fair value of his shares of stock under the circumstances described in subsections (b) and (c) of this section. *As used in this section, the word "stockholder" means a holder of record of stock in a stock corporation and also a member of record of a nonstock corporation;* the words "stock" and "share" mean and include what is ordinarily meant by those words and also membership or membership interest of a member of a nonstock corporation.

8 *Del.C.* § 262(a) (1983) (Emphasis added).

While the "holder of record" provision was added to Section 262 in the 1967 revision of the General Corporation Law, for decades this Court had consistently defined the term "stockholder" as a holder of record.[3] *Salt Dome Oil Corp. v. Schenck,* Del.Supr., 41 A.2d 583, 589 (1945). *See also Carl M. Loeb, Rhoades & Co. v. Hilton Hotels Corp.,* Del.Supr., 222 A.2d 789 (1966); *Olivetti Underwood Corp. v. Jacques Coe & Co.,* Del.Supr., 217 A.2d 683 (1966).

Since the 1967 revisions, Section 262 has been amended several times, including a major redrafting in 1981. *See* 63 Del. Laws, ch. 25, § 14 (1981).[4] Significantly, none of those changes affected the definition of a stockholder.

This statutory history also is consonant with other basic precepts of corporation-stockholder relationships under the General Corporation Law. Thus, 8 *Del.C.* § 220(a)

(1983), relating to the inspection of books and records, defines stockholder as a "stockholder of record". This is reinforced by 8 *Del.C.* § 219(c) (1983), providing that a company may look to its stock ledger as the sole evidence of who is entitled to vote at a stockholders' meeting.[5] See *Rainbow Navigation, Inc. v. Pan Ocean Navigation, Inc.,* Del.Supr., 535 A.2d 1357 (1987), decided today. Section 262 also is harmonious with the Uniform Commercial Code. Under 6 *Del.C.* § 8–207(1) (Supp.1986) a corporation "may treat the *registered owner* as the person *exclusively* entitled to vote, to receive notifications and otherwise to exercise all the rights and powers of an owner." (emphasis added).

## B. The Use of Nominees

The use of security depositories by brokerage firms now is a common practice. The decision in that regard, however, is a matter which is strictly between the broker and its clients. As Mr. Karasek, the Prudential–Bache employee who signed the Earle demand, testified:

> If the client wants their (sic) stock in street name, then Prudential–Bache will buy the securities for the client ...; the client has determined she wants it in street name. That's how it's done.

> \* \* \*

> The choice is up to the client.

In making that choice, the burden must be upon the stockholder to obtain the advantages of record ownership. *See Lewis v. Corroon & Reynolds Corp.,* Del. Ch., 57 A.2d 632, 634 (1948); *Nickles v. United Nuclear Corp.,* Del. Ch., 192 A.2d 628 (1963). The legal and practical effects of having one's stock registered in street name cannot be visited upon the issuer. The attendant risks are those of the stockholder, and where appropriate, the broker.

---

**3.** Prior to the 1967 amendments, Section 262(a) provided in pertinent part:

   [T]he word "stockholder" means and includes a holder of stock in a stock corporation.

   Similar language appeared in an even earlier statute.

   *See* Del.Rev.Code § 2093, Sec. 61 (1935).

**4.** *See also* footnote 1.

**5.** 8 *Del.C.* § 219 provides in pertinent part:

   (c) The stock ledger shall be the only evidence as to who are the stockholders entitled to examine the stock ledger, the list required by this section or the books of the corporation, or to vote in person or by proxy at any meeting of stockholders.

As this Court stated in *American Hardware Corp. v. Savage Arms Corp.*, Del. Supr., 136 A.2d 690 (1957):

> Under the General Corporation Law, no one but a registered stockholder is, as a matter of right, entitled to vote, with certain exceptions not pertinent here. If an owner of stock chooses to register his shares in the name of a nominee, he takes the risks attendant upon such an arrangement, including the risk that he may not receive notice of corporate proceedings, or be able to obtain a proxy from his nominee. The corporation, except in special cases, is entitled to recognize the exclusive right of the registered owner to vote. It has been held in this State that an unregistered stockholder may not dissent from a merger and demand appraisal of his stock.... The corporation has ordinarily discharged its obligation under Delaware law when it mails notice to the record owner.

*Id.* at 692. (Citations omitted).

Here, the problem is one between the plaintiffs and their brokers. Enstar cannot, and should not, be blamed for the failure of a nominee or broker to correctly perfect appraisal rights for a beneficial owner. Several other brokers properly instructed CEDE & Co. to demand an appraisal on behalf of their customers. The failures of Prudential–Bache or Drexel in that regard should not be shifted to, or borne by, Enstar. The dispute, if any, is between these brokers and their clients.

### III.

In its decision the Court of Chancery relied on a theory of notice discussed in *Raab v. Villager Industries, Inc.*, Del. Supr., 355 A.2d 888 (1976). We think, however, that the trial court misinterpreted *Raab*.

That case addressed problems, which arose under the pre–1976 version of Section 262, involving a two-step perfection process: prior to the merger vote the dissenting stockholder filed a written objection with the corporation; after the vote the dissenting stockholder made a written demand for payment. Significantly, *Raab's* holdings are prefaced by a brief statement comparing the relative formality required to execute each of those steps:

> The validity of the claims here under review involved pre-vote written objections—not written demands for payment. We distinguish between the two writings in determining the requisite formality and technicality of execution. The purpose of the objection is of lesser importance than the demand for payment. "The only purpose of requiring an objection in writing prior to the stockholders' meeting is to give some advance notice [to corporate officers and other stockholders] of possible dissentients. The purpose is not to make known to a certainty those who will dissent, for as has been pointed out, a stockholder who objects in writing is still at liberty to vote his shares in favor of the merger, or even to vote his shares against the merger and then conclude to accept its benefits. The purpose of the statute in requiring an objection in writing is merely to give notice."

355 A.2d at 891 (quoting *Zeeb v. Atlas Powder Co.*, Del.Supr., 87 A.2d 123, 127 (1952)).

Later the court continued:

> A demand for payment under § 262(b), on the other hand, requires the formality and legal technicality befitting a last step in the final transaction between the corporation and its dissenting stockholder. A demand for payment must be properly and formally signed by or for all stockholders of record.

*Id.* at 892.

As *Raab* noted, each of the claims, except one, related to the written *objection* requirement, which involved a less exacting formality of execution than the demand. Thus, the Court concluded that a written objection signed by one joint owner, but not the other, was sufficient to fulfill the notice objective of Section 262. 355 A.2d at 892. Likewise, the Court held that an objection filed by a broker was sufficient to give the corporation notice, even though the shares were owned of record by the customer. *Id.* at 893. Significantly, the Court denied the

one claim involving a demand, because it was not signed by both joint owners. *Id.* at 892. Thus, *Raab* reinforces our holdings here.

The effect of the 1976 amendments to Section 262 was to combine the pre-vote written objection and the post-vote written demand into a single step. Thus, the present pre-vote demand acts both as a notification to the corporation of the stockholder's dissent, and as a formal demand for an appraisal. Given *Raab*'s recognition of the important policy behind the requisite formality of executing the demand, our conclusions reached here are in harmony with that object.

Section 262 seeks an expedient and certain appraisal of stock. This goal was enunciated long ago in *Salt Dome Oil Corp. v. Schenck*, Del.Supr., 41 A.2d 583 (1945):

> With respect to matters intracorporate affecting the internal economy of the corporation, or involving a change in the relationship which the members bear to the corporation, there must be order and certainty, and a sure source of information, so that the corporation may know who its members are and with whom it must treat, and that the members may know, in a proper case, who their associates are. Especially is this true in a merger proceeding which is essentially an intracorporate affair. The merging corporations are entitled to know who the objecting stockholders are so that the amount of money to be paid to them may be provided. The stockholders in general are entitled to know the dissentients and the extent of the dissent. *Stephenson v. Commonwealth & Southern Corporation*, 18 Del.Ch. 91, 156 A. 215. The corporation ought not to be involved in possible misunderstandings or clashes of opinion between the non-registered and registered holder of shares. It may

rightfully look to the corporate books as the sole evidence of membership.

*Id.* at 588–89.

We reaffirm those principles. While not discussed by the trial court, we also note two of its own cases that reach results consistent with our ruling today. In *Raynor v. LTV Aerospace Corp.*, Del. Ch., 331 A.2d 393 (1975), and *Engel v. Magnavox Co.*, Del. Ch., C.A. No. 4896 (April 21, 1976) [Available on WESTLAW, 1976 WL 1705], demands for appraisals made by the beneficial owners of stock, rather than the stockholders of record, were invalidated, even though the identity of the holder of record was known.

Thus, in the interest of promoting certainty in the appraisal process, and consistent with *Raab*, a valid demand must be executed by or on behalf of the holder of record, whether that holder is the beneficial owner, a trustee, agent or nominee. Any other result would embroil merging corporations in a morass of confusion and uncertainty, none of which was of their making.

## IV.

■ Finally, claimants contend that Enstar's notice to stockholders was insufficient to advise beneficial owners of the means for perfecting their appraisal rights. Again, plaintiffs rely on *Raab v. Villager Industries, Inc.*, which mandates the issuance of specific instructions as to "the manner in which one may purport to act for a stockholder of record such as a joint owner, a partnership, a corporation, a trustee or a guardian." 355 A.2d at 895. This presents questions of materiality rather than establishing a mechanistic rule of disclosure.

The Delaware disclosure standard for proxy materials is stated in *Rosenblatt v. Getty Oil Co.*, Del.Supr., 493 A.2d 929 (1985).[6] Under that rule the trial court's

---

**6.** "[T]he standard ... contemplate[s] ... a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder. Put another way, there must be a substantial likeli-

hood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Rosenblatt v. Getty Oil Co.*, Del.Supr., 493 A.2d 929, 944–45 (1985) (quoting *TSC Industries, Inc. v.*

analysis should have focused on the question whether the Enstar proxy statement failed to disclose a material fact necessary to permit a reasonable person to perfect his or her (or a customer's) appraisal rights.[7] The trial court did not apply this standard, but instead held that a proxy statement should provide step-by-step instructions as to how a nominee can perfect an appraisal demand for the shares of a beneficial owner. Granting that proper instructions are material, they were in fact given here. Beyond that, the relationship between a beneficial stockholder and a nominee are not relevant matters of concern to the merging corporations.

The judgment of the Court of Chancery is REVERSED.

*Northway, Inc.,* 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976)).

**7.** It follows that *Tabbi v. Pollution Control Industries, Inc.,* Del. Ch., 508 A.2d 867 (1986) is implicitly overruled in part. The *Tabbi* court incorrectly relied upon *Raab* in determining the sufficiency of disclosures in a proxy statement. Whether the particular facts of *Tabbi* would withstand the *Rosenblatt* standard we need not decide.