ALABAMA BY–PRODUCTS CORPORA-
TION and Drummond Company, Inc., as
successor-in-interest, Respondents Be-
low, Appellants,

v.

CEDE & CO. acting on Behalf of SHEAR-
SON LEHMAN BROTHERS, INC. and
Amy N. Ager and Merrill Lynch, Pierce,
Fenner & Smith, acting on behalf of
Cede & Co., Petitioners Below, Appel-
lees.

No. 45,1994.

Supreme Court of Delaware.

Submitted: Feb. 14, 1995.
Decided: April 27, 1995.

Richard L. Sutton (argued), and David G. Thunhorst, Morris, Nichols, Arsht & Tunnell, Wilmington, for appellants Alabama By-Products Corp. and Drummond Co., Inc.

Bruce M. Stargatt and Bruce L. Silverstein (argued), Young, Conaway, Stargatt & Taylor, Wilmington, for appellee Cede & Co. on behalf of Shearson Lehman Brothers, Inc.

Thomas J. Allingham, II, R. Michael Lindsey (argued), and Joseph M. Asher, Skadden, Arps, Slate, Meagher & Flom, Wilmington, for appellee Merrill Lynch, Pierce, Fenner & Smith, Inc.

Before WALSH, HOLLAND and HARTNETT, JJ., and RIDGELY, President Judge * and DUFFY, J.,** Retired.

WALSH, Justice for the majority:

In this appeal from the Court of Chancery, we address the question of whether a corporation, subsequent to a cash-out merger, may be required to pay the difference between the merger price and the appraisal value for shares mistakenly tendered prior to the appraisal determination. The Court of Chancery, in granting summary judgment in favor of the shareholders' agents, ruled that, under the circumstances of the inadvertent tender,

shareholders who had perfected their appraisal rights were entitled to the benefit of the appraisal award plus interest on the difference.

We conclude that, under the Delaware statutory framework which governs appraisal proceedings, a perfected claim for appraisal of stock is not lost through an inadvertent tender which would have the effect of dismissing the shareholder from the appraisal action without court approval. We further conclude that the Court of Chancery properly exercised its discretion in the award of interest. Accordingly, we affirm.

I

This appeal arises out of the August 13, 1985 short-form merger between Drummond Company, Inc. ("Drummond") and Alabama By-Products Corporation ("ABC") under which Drummond became the surviving entity. Under the terms of the merger, the minority shareholders of ABC were cashed out at $75.60 per share. On the date of the merger, Cede & Co. ("Cede") was the shareholder of record, in the aggregate, of approximately 8,443 shares of ABC Class B common stock. Cede held 2,440 shares on behalf of Shearson Lehman Brothers, Inc. ("Shearson") which, in turn, held the stock for the beneficial owner, Amy N. Ager ("Ager"). Cede was also the record holder of 700 shares of ABC Class B common stock for appellee Merrill Lynch, Pierce, Fenner & Smith, Inc. ("Merrill Lynch") which held the shares on behalf of the beneficial owners, Harald L. Smyer and Sidney W. Smyer ("Smyers").

On August 25, 1985, ABC sent a Notice of Merger to all ABC shareholders pursuant to 8 Del.C. § 262(d)(2). Cede thereafter perfected appraisal rights for approximately 7,168 Class B shares, including the Merrill Lynch and Shearson shares in its name, thereby rejecting the merger price.[1] On De-

---

* Sitting by designation pursuant to Supreme Court Rules 2 and 4(a) and Del. Const. art. IV, § 12.

** Sitting by designation pursuant to Supreme Court Rule 2 and Del. Const. art. IV, §§ 12 and 38.

1. By letter dated September 6, 1985, Cede informed ABC of its demand for appraisal of 2,440 shares which were held for Shearson and were beneficially owned by Amy N. Ager. Although the record before this Court does not reflect the date of Merrill Lynch's appraisal demand, it is undisputed that Cede likewise perfected apprais-

cember 3, 1985, an appraisal petition was filed by several shareholders in the Court of Chancery against ABC.[2] On January 29, 1986, as required by 8 *Del.C.* § 262(f), ABC submitted to the Court of Chancery a verified list of the names and addresses of those shareholders who had purported to demand the appraisal of their shares. Cede was one of approximately two hundred shareholders identified on the verified list.

The parties engaged in extensive discovery during the following year. On May 5, 1987, while the appraisal action was pending in the Court of Chancery, Merrill Lynch, inadvertently and without the knowledge of the beneficial owner, notified ABC's transfer agent, AmSouth Bank, N.A. ("AmSouth"), that Cede wished to redeem 400 of its 700 shares for the $75.60 per share merger consideration.[3] The redemption was accomplished and payment was received by Merrill Lynch.[4]

On July 30, 1987, the Court of Chancery entered an order ("July Order") which, *inter alia*, established certain procedures for verifying the status of the stockholders in the pending appraisal action. The terms of the July Order required ABC to file a Stockholder Information Form ("SIF") for each stockholder who had demanded appraisal. The order directed ABC to specify the share ownership for each shareholder on the verified list and, in the event "ABC object[ed] to the right of appraisal of any stockholder on the Verified List," to "state specifically the grounds for the objection(s)." Among the grounds for objection that could be asserted by ABC was either (i) an acceptance of the merger consideration, or (ii) a withdraw of

demand for appraisal and receipt of payment for shares in the amount of the merger consideration. The July Order also established a date for an Entitlement Hearing at which the court would determine the appraisal rights of any shareholder to whom ABC objected in the SIF.

ABC originally sent Cede five SIFs, each of which stated that Cede demanded appraisal for 700 shares of ABC common stock.[5] By letter dated October 1, 1987, Edward M. Selfe, Esquire, counsel for the appraisal petitioners, informed the Register in Chancery that the SIFs were incorrect in that they did not properly identify the beneficial owners on whose behalf Cede demanded appraisal. ABC thereafter revised and sent the SIFs to Cede. Two of these SIFs separately reflected Cede as the record owner of 700 shares for Merrill Lynch and 2,440 shares for Shearson. ABC stated no objection to either designation, despite Merrill Lynch's surrender of 400 shares five months earlier. Cede later returned the respective SIFs to the Register in Chancery with the following corrections regarding the beneficial owners:

2,440 shares were held by Shearson–Lehman Brothers, Inc. for its customer, Amy N. Ager.

CEDE & Co. for Merrill Lynch, Pierce, Fenner & Smith, Inc. who in turn is holding shares for the beneficial owners of Alabama By–Products Corp. Class B stock.

Harald L. Smyer account number 435–23539 300 shares.

Sidney W. Smyer account number 435–21306 400 shares.

---

al rights with respect to the 700 Merrill Lynch shares.

2. Drummond was later added as a defendant as the successor in interest to ABC.

3. Cede authorized Merrill Lynch to act for it with respect to those 700 shares.

4. According to an affidavit submitted by R. Weaver Self, a former Senior Vice President and Treasurer of ABC, it was not uncommon for shareholders to tender their certificates for the merger consideration throughout this period of time. In accordance with ABC's practice, those stockholders who had chosen to receive the merger consideration would submit their share certificates along with a letter of transmittal to

AmSouth for payment. AmSouth would then issue a check to the shareholder who surrendered the shares, and, in turn, AmSouth would notify Drummond of the total number of shares that had been transmitted and redeemed that day. Drummond would then reimburse AmSouth for the surrendered shares. During this procedure, AmSouth apparently notified Drummond of the total number of shares tendered without indicating the identity of each tendering shareholder.

5. In addition to the appraisal demands for the Merrill Lynch and Shearson shares, Cede had also demanded appraisal with respect to shares it held for J.C. Bradford & Co., Chase Manhattan Bank, and Stearne, Agee & Leach, Inc., as well as shares which it held in its own name.

Thus, Cede also failed to correct the SIF regarding the shares held for Merrill Lynch to reflect the recent tender of 400 shares.

Although ABC did not contest Cede's appraisal rights regarding the shares it held for Merrill Lynch and Shearson, it did object to the appraisal demands of several other claimants, including 3,910 total shares held of record by Cede as a nominee for PaineWebber Incorporated ("PaineWebber") on behalf of several beneficial owners. An entitlement hearing was later held to determine the validity of the demand for appraisal for the PaineWebber shares.[6] On October 11, 1988, the Chancery Court issued a memorandum opinion denying PaineWebber's demand for appraisal with respect to the 3,910 shares on the basis that the demand was not in compliance with Section 262 since it was not submitted in the name of the shareholder of record, Cede. *Neal v. Alabama By–Products,* Del.Ch., C.A. No. 8282, slip op. at 8, 1988 WL 105754, Berger, V.C. (Oct. 11, 1988) (citing *ENSTAR Corp. v. Senouf,* Del.Supr., 535 A.2d 1351, 1356 (1987)).

The July Order also directed the Register in Chancery to notify each shareholder determined to be entitled to an appraisal of their shares (whether by ABC's failure to object in the SIF or following the Entitlement Hearing) within thirty days of such a determination of the number of shares that were entitled to appraisal. The Notice of Entitlement sent to such shareholders advised them to deliver their certificates to the Register in Chancery within sixty days of the mailing of the notice for a notation (stamp) thereon of the pendency of the appraisal action. For whatever reasons, this procedure was never implemented, apparently with the acquiescence of ABC.

The appraisal action proceeded to trial in June, 1989, and, following extensive briefing, the Court of Chancery entered its opinion on August 1, 1990, rejecting the merger price and fixing the fair value of shares seeking appraisal at $180.67 per share. *Neal v. Ala-*

*bama By–Products Corporation, et al.* Del. Ch., C.A. 8282, 1990 WL 109243, Chandler, V.C. (Aug. 1, 1990). That ruling was affirmed on appeal. *Alabama By–Products Corp. v. Neal,* Del.Supr., 588 A.2d 255 (1991).

The second tender that is the focus of this appeal occurred while the appraisal action was under advisement in the Court of Chancery. On March 14, 1990, Shearson caused Cede to tender the 2,385 shares held in its name to AmSouth. AmSouth transmitted payment based on the $75.60 merger price. Shearson claims that its actions that caused this tender of Cede's shares were inadvertent and without the consent of the beneficial owners.

In April, 1991, following the affirmance by this Court, the Court of Chancery entered its final judgment and direction for surrender of the certificates entitled to the appraisal price. Drummond thereafter discovered the 1987 surrender by Cede of the 400 Merrill Lynch shares and the 1990 surrender by Cede of the shares it held for Shearson. Drummond, contending that a post-appraisal surrender of shares was a prerequisite to final payment of the appraisal price, refused to pay Cede the difference between appraisal value and merger price for the shares that had been tendered. Asserting inadvertent tenders, Merrill Lynch and Shearson filed motions on behalf of Cede in the Court of Chancery to compel Drummond to pay them the difference between the merger price and the appraisal figure, plus interest on the amount withheld.[7]

In a memorandum opinion, the Court of Chancery granted the motions of Shearson and Merrill Lynch to compel Drummond's payment of the appraisal consideration to Cede on behalf of Merrill Lynch and Shearson. *Neal v. Alabama By–Products Corp.,* Del.Ch., C.A. No. 8282, 1993 WL 388372, Chandler, V.C. (Sept. 22, 1993) ("Opinion"). In his decision, the Vice Chancellor noted that Section 262 of the Delaware General Corporation Law provides the only "method

---

**6.** The other disputed appraisal claimants settled their claims with ABC.

**7.** Both Merrill Lynch and Shearson paid their respective beneficial owners the full amount to

which they were entitled under the judgment in exchange for an assignment of the beneficial owners' rights to the appraisal award.

by which a stockholder who no longer wants to participate in an appraisal proceeding and wishes to exchange shares for merger consideration may withdraw from an appraisal proceeding ... it does not allow parties to voluntarily settle a proceeding without the Court's approval." Opinion at 5–6. The Vice Chancellor reasoned that, although Cede cashed in 400 of its 700 shares held for Merrill Lynch, it failed to submit a written request to withdraw from the appraisal. Because the statute requires written approval by the corporation, Drummond's payment (via its agent, AmSouth) of the merger consideration did not amount to its implicit approval of Cede's redemption. Finally, and "[m]ost notably," the Court of Chancery "did not approve a settlement or dismissal of the appraisal proceeding as to Merrill Lynch."[8] Opinion at 7. Accordingly, the Vice Chancellor concluded that neither transaction constituted a withdrawal from the appraisal proceeding under Section 262. Thus, each petitioner was entitled to receive the appraisal consideration.

The Court of Chancery rejected Drummond's contention that, because Cede had previously surrendered certain shares and received the merger consideration, it could not "tender" those shares as required by the appraisal order. The Vice Chancellor noted that, while the appraisal statute requires stockholders to surrender their share certificates to participate in an appraisal award, the purpose of this requirement was to prove actual ownership of stock by each claimant. Because the ownership of the negligently tendered stock was not contested, the court concluded that nothing in its order requiring surrender of certificates prohibited Cede from participating in the appraisal award with respect to the shares it held for Shearson and Merrill Lynch. Accordingly, the court ordered Drummond to pay the difference in value between the merger price and the appraisal award. This is Drummond's appeal of that judgment.

## II

### A.

■ Under Delaware law, the appraisal remedy is "entirely a creature of statute."

*Alabama By–Products v. Neal,* 588 A.2d at 256; *Kaye v. Pantone, Inc.,* Del.Ch., 395 A.2d 369, 375–76 (1978). It is a limited legislative remedy developed initially as a means to compensate shareholders of Delaware corporations for the loss of their common law right to prevent a merger or consolidation by refusal to consent to such transactions. *Schenley Industries, Inc. v. Curtis,* Del. Supr., 152 A.2d 300, 301 (1959); *Salt Dome Oil Corp. v. Schenck,* Del.Supr., 41 A.2d 583, 587 (1945). The remedy is intended to provide those shareholders who dissent from a merger on the basis of inadequacy of offering price with an independent judicial determination of the fair value of their shares. *Alabama By–Products v. Neal,* 588 A.2d at 256; *Cede & Co. v. Technicolor,* Del.Supr., 542 A.2d 1182, 1186 (1988). By demanding appraisal, therefore, a shareholder "elects to withdraw from the corporate enterprise and take the value of his stock." *Southern Production Co. v. Sabath,* Del.Supr., 87 A.2d 128, 134 (1952).

The statute governing appraisal proceedings, Section 262 of the Delaware General Corporation Law, sets forth the specific procedure by which a stockholder may perfect appraisal rights and participate in an appraisal proceeding. *Senouf,* 535 A.2d at 1353–54; *Raynor v. LTV Aerospace Corp.,* Del.Ch., 317 A.2d 43, 46 (1974). Under Section 262(b), a written demand for appraisal, executed by or for the shareholder of record, must be timely filed with the corporation in order to perfect appraisal rights. The written demand acts as a notification to the corporation of the stockholder's dissent, as well as a formal demand for appraisal. *Senouf,* 535 A.2d at 1356. The statutory formalities concerning appraisal rights "furnish an orderly method for withdrawal from a corporation by shareholders who dissent from a merger." *Loeb v. Schenley Indus., Inc.,* Del. Ch., 285 A.2d 829, 830 (1971); *Senouf,* 535 A.2d at 1357. "The orderliness and certainty of the appraisal proceeding is to be maintained." *Schneyer v. Shenandoah Oil Corp.,* Del.Ch., 316 A.2d 570, 573 (1974).

■ A shareholder who elects to seek an appraisal rather than accept the terms of the

---

8. The court applied the same reasoning to the Shearson shares.

merger loses the traditional benefits of stock ownership: the right to vote stock and to receive payment of dividends or other distribution upon the shares. 8 *Del.C.* § 262(k); *Dofflemyer v. W.F. Hall Printing Co.*, Del. Supr., 432 A.2d 1198, 1200 (1981); *Cede & Co. v. Technicolor*, 542 A.2d at 1188. Once a shareholder perfects his right to appraisal, his status is transformed from that of an equity owner of the corporation to that of a quasi-creditor with a monetary claim against the surviving corporation. *Sabath*, 87 A.2d at 134; *Kaye*, 395 A.2d at 375; *Braasch v. Goldschmidt*, Del.Ch., 199 A.2d 760, 766 (1964). This change of status can be reversed only if the shareholder satisfies one of the express statutory conditions.

> [I]t is clear that upon the completion of the steps required to perfect the right to appraisal the stockholder has made an election to withdraw from the corporate enterprise and take the value of his stock—an election which is irrevocable unless one of the [ ] conditions specified in the statute shall subsequently occur.

*Sabath*, 87 A.2d at 133–34 (reviewing predecessor to Section 262). Section 262(k) provides that a stockholder who has complied with the formalities to perfect appraisal rights may reverse his election when:

> From and after the effective date of the merger or consolidation, ... if no petition for an appraisal shall be filed within [120 days after the effective date of the merger], or *if such stockholder shall deliver to the surviving or resulting corporation a written withdrawal of his demand for an appraisal and an acceptance of the merger or consolidation,* either within 60 days after the effective date of the merger or consolidation ... or thereafter *with the written approval of the corporation,* then the right of such stockholder to an appraisal shall cease. *Notwithstanding the foregoing, no appraisal proceeding in the Court of Chancery shall be dismissed as to any stockholder without the approval of the Court* and such approval may be condi-

tioned upon such terms as the Court deems just.

(emphasis added).

■ Thus, Section 262(k) provides three explicit conditions under which a stockholder's right to appraisal may cease: (1) if an appraisal petition is not filed within 120 days of the merger; (2) if the shareholder delivers to the corporation written notice of his intention to withdraw his demand for appraisal within sixty days of the merger; or (3) if the stockholder delivers to the corporation a written withdrawal of his demand after sixty days *with* the written approval of the corporation. *See Dofflemyer*, 432 A.2d at 1201 (noting that Delaware appraisal statute "sets forth the *exclusive* conditions under which a dissenting shareholder is permitted to reacquire the rights of stock ownership.") (emphasis added).

■ It is manifest that when the shares Cede held for Shearson and Merrill Lynch were surrendered, Cede did not comply with the conditions specified in Section 262(k) to permit its withdrawal from the appraisal action. First, the appraisal complaint was filed on December 3, 1985, within 120 days of the date of the merger, August 13, 1985. Second, Cede did not tender the disputed shares within sixty days of the merger. Third, Cede did not provide the corporation with a written notice of its withdrawal from the appraisal (because each tender was inadvertent), but simply cashed in certain shares. Finally, the fact that Drummond's transfer agent, AmSouth, actually accepted the tendered shares and remitted the merger consideration does not satisfy the statutory requirement that the *corporation* consent in writing to the withdrawal of a stockholder's perfected claim for appraisal. *See Sabath*, 87 A.2d at 132. Neither AmSouth nor Drummond acknowledged that the shares were subject to the appraisal action, much less provide the *written* approval that the statute explicitly requires. In fact, AmSouth was not authorized to accept a revocation or withdrawal of any appraisal demands and therefore could not provide written approval on behalf of Drummond, even if AmSouth were to discover the appraisal status of the tenders.[9] Without the written approval of

9. The agreement between AmSouth and ABC provided, in pertinent part, that the transfer

Drummond, Cede could not withdraw from the appraisal. *See Dofflemyer*, 432 A.2d at 1200.

More importantly, however, neither tender by Cede was approved by the Court of Chancery as required by the plain and unambiguous language of the appraisal statute. Section 262(k) provides that "no appraisal proceeding in the Court of Chancery shall be dismissed as to any stockholder without the approval of the Court." The "court approval" language was added to Section 262(k) in 1976 to codify a Court of Chancery holding that an appraisal proceeding must be treated like a class action for purposes of either dismissal or compromise. *See Lutz v. A.L. Garber Co., Inc.*, Del.Ch., 357 A.2d 746, 749 (1976); *Raynor v. LTV Aerospace Corp.*, Del. Ch., 317 A.2d 43 (1974); *see also* S. Arsht & L. Black, *Analysis of the 1976 Amendments to the Delaware General Corporation Law*, 2 Corporation (P–H) at 393–94 (1976) (provision intended to codify "recent decisions of the Court of Chancery that an appraisal proceeding must be treated as a class action for purposes of dismissal and is subject to Rule 23(e) of the Court of Chancery requiring court approval of the dismissal or settlement of a class action").

This Court has long recognized that an appraisal action is a proceeding in the nature of a class suit. *Sabath*, 87 A.2d at 134.[10] The unique fiduciary nature of the class action requires the Court of Chancery to participate in the consummation of any potential settlement to determine its intrinsic fairness. *Prezant v. De Angelis*, Del.Supr., 636 A.2d 915, 921 (1994); *Nottingham Partners v. Dana*, Del.Supr., 564 A.2d 1089, 1102 (1989); *Rome v. Archer*, Del.Supr., 197 A.2d 49, 53 (1964). Like Section 262(k), Chancery Rule 23(e) provides that a "class action shall not be dismissed or compromised without approval of the court." Section 262(k), however, explicitly requires court approval for a dismissal "as to any shareholder." Although Rule 23(e) refers only to the dismissal of the class action itself, the approval of the court, nonetheless, is generally required in a class action for the settlement of individual, as well as class, claims. *See, e.g., Botney v. Teledyne*, Del.Ch., C.A. No. 5786, slip op. at 4, 1983 WL 21017, Hartnett, V.C. (Nov. 22, 1983) (citing Herbert B. Newberg, *Newberg On Class Actions* § 1010.2b (1977)). The court approval requirement ensures that a shareholder does not settle out of the class suit at a premium, thereby abandoning the prosecution of the action to the detriment of other class members. *Wied v. Valhi*, Del. Supr., 466 A.2d 9, 15 (1983), *cert. denied*, 465 U.S. 1026, 104 S.Ct. 1284, 79 L.Ed.2d 687 (1984); *see also* 7B C. Wright, A. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 2d* § 1797 at 340–41 (1986) (purpose of rule is "to protect the nonparty members of the class from unjust or unfair settlements affecting their rights when the representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims").

---

agent "[is] not authorized to, and will not, make any recommendation on behalf of ABC or Drummond as to the exercise of the right to surrender or the right to seek appraisal."

10. Of course, "the statutory procedure in appraisal cases makes it a special classification of a class lawsuit and not just a general class action." *Lutz*, 357 A.2d at 750. For example, in class actions certified under Rule 23(b)(3), which, like appraisal suits, primarily seek recovery of monetary damages, all potential class members are given notice and the opportunity to "opt out" of the class within a designated time period. *Prezant v. De Angelis*, Del.Supr., 636 A.2d 915, 921 (1994). Once this time period expires, the absent class members are automatically included within the class. The certification of the class action restricts the right of settlement between the parties. *See* Herbert B. Newberg & Albert Conte, *Newberg on Class Actions*, § 15.19 (3d ed.

1992). In fact, once the class is certified, the approval of the court is necessary before the defendant may communicate with class members. *See, e.g., In re Winchell's Donut Houses, L.P. Securities Litig.*, Del.Ch., 1988 WL 135503 Allen, C. (Dec. 12, 1988).

In an appraisal proceeding, however, shareholders enter the appraisal class by complying with the statutory formalities required to perfect their appraisal rights. Thus, shareholders seeking appraisal "opt in" to a class, invariably before suit is even filed, rather than "opt out." "The appraisal petition, which may be filed either by the stockholder or the surviving corporation, is simply the means provided for enforcing the stockholder's right to have his shares evaluated or the corporation's correlative right to obtain his shares upon payment thereof." *Lichtman v. Recognition Equipment, Inc.*, Del.Ch., 295 A.2d 771, 772 (1972).

Hence, a corporation cannot buy out an individual class member without regard to the rights of the rest of the class. *Hutchison v. Bernhard,* Del.Ch., 220 A.2d 782, 784 (1965).

Drummond contends that the Section 262(k) provision requiring court approval was not implicated in this case because Cede was never "dismissed" from the appraisal litigation. Drummond emphasizes that it did not negotiate with Cede or offer it a premium settlement; rather, the action was fully prosecuted to final judgment. Thus, the policy behind the Section 262(k) court approval requirement was not implicated and the vice of selling out the class was avoided. It is argued that, so long as a tendering shareholder has some shares remaining by the time that the appraisal award is determined, he is still a party to the litigation and the appraisal proceeding is not "dismissed" as to him. In any event, Drummond contends that this case does not concern Section 262(k) because any shareholders who surrendered their shares for the merger consideration before the appraisal award simply were not entitled to payment under Section 262(i) and the express terms of the final judgment of the Court of Chancery. In other words, with respect to the shares Cede held for Merrill Lynch and Shearson, Cede was simply a member of the appraisal class who could not comply with the final order; therefore, there was no need for the Court of Chancery to dismiss Cede, but rather, it just should not pay Cede the appraisal value as to those shares. We find this argument unconvincing.

It is well settled that "parties to an appraisal proceeding cannot voluntarily settle such a proceeding without the approval of the Court of Chancery." *In re ENSTAR Corp.,* Del.Supr., 604 A.2d 404, 414 (1992). If we were to adopt Drummond's position, any shareholder could settle his claims with the corporation without the approval of the Court of Chancery, so long as one shareholder retained at least one share after the settlement. We believe that such a result violates the spirit, if not the letter, of Section 262. The statute clearly requires the approval of the court before an appraisal claimant can terminate his perfected right to appraisal. The statutory direction applies with equal force whether the shareholder wishes to withdraw from the appraisal with respect to all of his appraisal shares or a single share of stock. *See, e.g., Lichtman v. Recognition Equipment, Inc.,* Del.Ch., 295 A.2d 771, 772 (1972). Once a shareholder elects to perfect his appraisal rights with respect to a definite allotment of stock, he may not thereafter alter his decision without strict compliance with the appraisal statute. *Id.*

We see no reason to apply a relaxed construction of the appraisal statute with respect to either an inadvertent or voluntary act. Shareholders who tender their appraisal shares inadvertently are subject to the same statutory requirements as those who intentionally attempt to settle their appraisal claims or "sell out" the rest of the class. In either circumstance, the statute requires court approval. In sum, that condition applies whenever shares subject to a perfected claim for appraisal are surrendered after the appraisal petition has been filed in the Court of Chancery. 8 *Del.C.* § 262(k).

## B.

Notwithstanding the failure to comply with the express requirements of Section 262(k) regarding dismissal or withdrawal from appraisal proceedings, Drummond contends that Cede forfeited its right to participate in the appraisal award with respect to the Shearson and Merrill Lynch shares by tendering those shares in exchange for the merger consideration. In support of its position, Drummond relies, *inter alia,* on two decisions from the Court of Chancery that held that stockholders who surrendered their shares to the surviving corporation could not thereafter participate in an appraisal proceeding.

In *LeCompte v. Oakbrook Consolidated, Inc.,* Del.Ch., C.A. No. 8028, Berger, V.C., 1986 WL 2827 (March 7, 1986), the Court of Chancery held that a nominee record shareholder who tendered stock to the corporation against the wishes of the beneficial owner could not thereafter pursue appraisal rights. In our view, *LeCompte* is readily distinguishable.

Factually, *LeCompte* involved a shareholder who failed to make a proper and timely demand for appraisal. Since appraisal rights were never perfected, the shareholder was prevented from entering the appraisal class *ab initio*, thereby rendering irrelevant the Section 262(k) prerequisites for the cessation of perfected appraisal rights. Obviously, a shareholder who fails to perfect appraisal rights and who surrenders his shares for the merger consideration is not entitled to an appraisal. In contemplation of the statutory scheme, the shareholder has elected to receive the merger consideration in lieu of an appraisal, and is bound by that election.

Drummond also relies upon *Engel v. Magnavox*, Del.Ch., C.A. No. 4896, 1976 WL 1705, Brown, V.C. (Feb. 5, 1976). In *Engel*, the court held that "any stockholder who has submitted his shares to the corporation and received in exchange the consideration provided for under the terms of the merger cannot thereafter be a party to any appraisal proceedings." *Id.*, slip op. at 6 (quoting *Abraham & Co. v. Olivetti Underwood Corp.*, Del.Ch., 204 A.2d 740, 742–43 (1964), *aff'd sub nom. Olivetti Underwood Corp. v. Jacques Coe & Co*, Del.Supr., 217 A.2d 683 (1966)). This decision is also factually distinguishable from the case at bar.

In contrast to the inadvertent tenders by Cede of the Merrill Lynch and Shearson shares, the shareholders in *Engel* demanded an appraisal and, thereafter, intentionally forwarded their shares to the corporation "under protest." Thus, the shareholders in *Engel* deliberately attempted to hedge their position by seeking appraisal *and* obtaining the merger consideration in the interim. Aside from raising serious equitable considerations, this scenario contravenes the basic principle underlying the appraisal statute that an investor make an election either to accept the merger consideration or to pursue an appraisal of his shares. *See Smith v. Shell Petroleum, Inc.*, Del.Ch., C.A. No. 8395, slip op. at 6–7, 1990 WL 186446, Hartnett, V.C. (Nov. 26, 1990). The shareholder cannot attempt to have it both ways. Accordingly, *Engel* is inapposite.

Drummond next advances a policy argument that corporations should not be re-

quired to undertake the immense burden of investigating the potential appraisal status of every share that is surrendered to the corporation after a merger. Drummond notes that, if the beneficial owners (Ager and the Smyers) held their shares in their own name and not through a broker or nominee, they would have signed the transmittal letter and received the merger consideration directly and, therefore, no mistaken tender would have occurred. Drummond argues that the risks of holding stock in a particular manner "cannot be visited upon the issuer," *Senouf*, 535 A.2d at 1354–55, and "[t]he corporation ought not to be involved in possible misunderstandings . . . between the non-registered and registered holder of shares." *Salt Dome Oil Corp.*, 41 A.2d at 589. Drummond claims that burdening the corporation with the determination of share ownership will result in the disruption of the orderly administration of the appraisal remedy and prejudice the corporation. *See Jacques Coe & Co. v. Minneapolis–Moline Co.*, Del.Ch., 84 A.2d 815 (1949).

It is well established that Delaware law does not impose upon the corporation "an affirmative duty to 'reasonably' discover the identity of the beneficial owners of shares which were tendered by a nominee in exchange for the merger consideration." *In re ENSTAR*, 604 A.2d at 412. Instead, the risk is placed upon the beneficial owner that a nominee may act contrary to the owner's interests. *Senouf*, 535 A.2d at 1354–55. Although we continue to recognize the force of these holdings, we do not believe they transcend the express terms of the appraisal statute. Once appraisal rights are perfected, the corporation, as the official custodian of share ownership records, continues to exercise the responsibility for supervising the surrender of shares for the merger consideration. Moreover, where, as here, under the July Order, the corporation is required to act affirmatively to verify the status of dissenting shareholders, it must discharge that duty correctly.

Certainly, a corporation cannot be blamed for a failure by a nominee or broker to perfect the appraisal rights of the beneficial owner. *Senouf*, 535 A.2d at 1355. The ap-

praisal demand is an essential step in the appraisal procedure and requires "formality and legal technicality befitting a last step in the final transaction between the corporation and its dissenting stockholder." *Raab v. Villager Industries, Inc.,* Del.Supr., 355 A.2d 888, 892 (1976). Currently, the appraisal demand acts as a notice to the corporation of the shareholder's dissent and as a formal demand for appraisal. *Senouf,* 535 A.2d at 1356. It places the corporation on notice of the shareholders who are dissenting from the merger, as well as the total number of shares that will be subject to the appraisal. *Zeeb v. Atlas Powder Co.,* Del.Supr., 87 A.2d 123, 127 (1952); *Stephenson v. Commonwealth & Southern Corp.,* Del.Ch., 156 A. 215, 217 (1931). This information allows the corporation to allocate the funds necessary to pay the dissenting shareholders the fair value of their stock. *Salt Dome Oil Corp.,* 41 A.2d at 589.

We do not insist on statutory compliance merely for the sake of formality. By exacting strict compliance in the execution of the demand, the appraisal statute ensures the expedient and certain appraisal of stock. *Senouf,* 535 A.2d at 1356. Consistent with this objective, a valid demand must be executed by or on behalf of the holder of record, whether the record holder be the beneficial owner, nominee, agent or broker. *Id.* By permitting the corporation to rely upon the corporate books as the sole evidence of stock ownership, the corporation is thereby protected from the risks attendant upon nominee stock ownership. *Id.; Salt Dome Oil Corp.,* 41 A.2d at 589.

Similarly, once appraisal rights have been perfected, the corporation is properly on notice of which shareholders are seeking the appraisal remedy. At this point, other provisions of Section 262 govern the circumstances by which a shareholder may withdraw from the appraisal process. If the statute imposes a bright line for compliance, it does so for the benefit of all parties to the appraisal proceeding. Because it was uncon-

tested that Cede had perfected appraisal rights with respect to shares it held on behalf of Merrill Lynch and Shearson, Drummond cannot complain that it lacked at least constructive notice of the appraisal status of both inadvertent tenders. Thereafter, the corporation was entitled to look to the statute to determine whether there had been any change in the status of shareholders seeking appraisal. Under such circumstances, the rule regarding the risks attendant to nominee share ownership is inapposite. In contrast to earlier decisions, our decision today does not "embroil merging corporations in a morass of confusion and uncertainty, none of which was of their making." *Senouf,* 535 A.2d at 1356.

We recognize that our decision may impose upon the corporation the responsibility of overseeing the surrender of shares after a merger. We do not believe that this burden is particularly onerous, considering the level of administrative duties which corporations normally undertake in the preparation and execution of a merger. Nevertheless, it is worth noting that this entire controversy could have been avoided if the parties had utilized the notation or "stamping" procedure under Section 262(g) as required by the July Order.[11] Although Section 262(g) characterizes notation of certificates as permissive rather than mandatory, this procedure affords a simple and convenient method for segregating appraisal from nonappraisal shares. Moreover, the notation device affords a corporation using a tender/payment agent protection against intentional as well as inadvertent tenders without significant involvement on the part of the corporation.

Under the Delaware appraisal scheme, the rights of the corporation vis-a-vis the appraisal petitioners are reciprocal. A shareholder's right to appraisal vests at the time of perfection, and that right may cease only upon strict compliance with one of the conditions set forth in Section 262(k). As the Vice Chancellor noted, if the appraisal award had

---

11. Section 262(g) provides in pertinent part:

(g) ... The Court may require the stockholders who have demanded an appraisal for their shares and who hold stock represented by certificates to submit their certificates of stock to the Register in Chancery for notation thereon of the pendency of the appraisal proceedings; and if any stockholder fails to comply with such direction, the Court may dismiss the proceedings as to such stockholder.

been lower than the merger price that Cede received on behalf of Merrill Lynch and Shearson by way of the inadvertent tenders, Drummond would have been able to pursue an action to recover the difference between the merger price and the appraisal award from Cede regarding the Merrill Lynch and Shearson shares. This result flows from the principle that once a shareholder is in the appraisal class, he is equally bound by the judgment.

## C.

Incident to the first oral argument before a panel of this Court, the parties were directed to file supplemental memoranda to address the question of whether a member of an appraisal class loses standing to participate in the appraisal action if he later inadvertently surrenders his shares and accepts the merger consideration. We now address this issue.

■ As a preliminary matter, a party must have standing to sue in order to invoke the jurisdiction of a Delaware court. *Stuart Kingston, Inc. v. Robinson*, Del.Supr., 596 A.2d 1378, 1382 (1991). The standing doctrine enables Delaware courts, as a matter of self-restraint, to "avoid the rendering of advisory opinions at the behest of parties who are mere intermeddlers." *Id.* (citation omitted). In essence, the question of standing focuses on whether an individual possesses an actual stake in the controversy for which he seeks judicial resolution. *See generally Sierra Club v. Morton*, 405 U.S. 727, 731, 92 S.Ct. 1361, 1364, 31 L.Ed.2d 636 (1972). In other words, "each party to an action must possess the capacity to maintain such action." *Thompson v. Thompson*, Del.Super., 90 A.2d 484, 485 (1952).

The standing doctrine has assumed special significance in the area of corporate law. For example, in order to have standing to initiate a shareholder derivative suit, a plaintiff must have been a shareholder at the time

of the challenged transaction, as well as at the commencement of suit. 8 *Del.C.* § 327; *see also* Ch.Ct.R. 23.1; *Schreiber v. Bryan*, Del.Ch., 396 A.2d 512, 516 (1978).[12] In addition, this Court has held that a plaintiff must also maintain his shareholder status throughout the derivative litigation. *Lewis v. Anderson*, Del.Supr., 477 A.2d 1040, 1046 (1984); *Kramer v. Western Pacific Industries*, Del.Supr., 546 A.2d 348, 354 (1988).

Since derivative standing is dependent upon the ownership of stock, "[a] plaintiff who ceases to be a shareholder, whether by reason of a merger or for any other reason, loses standing to continue a derivative suit." *Lewis*, 477 A.2d at 1049. In the context of a corporate merger, the former shareholders of the merged corporation lose standing to maintain a derivative suit once their ownership of stock is eliminated. *Id.* Pursuant to 8 *Del.C.* § 259(a), the derivative claim vests in the new shareholder (surviving corporation) upon the transfer of stock through the merger. *Id.; Schreiber v. Carney*, Del.Ch., 447 A.2d 17, 21 (1982); *Braasch v. Goldschmidt*, Del.Ch., 199 A.2d 760, 767 (1964). The purpose of the continuous ownership requirement is to prevent the abuses frequently associated with a derivative suit. *Lewis*, 477 A.2d at 1046. Drummond argues that, by analogy, the exacting standards which control standing in derivative actions should apply equally in appraisal proceedings.

A close analysis of the nature of the derivative action as it developed in equity, however, persuades us that its strict standing requirements are inapplicable here. In simplest terms, the derivative action is a litigation device that enables shareholders to sue on behalf of the corporation where those in control of the company refuse or fail to assert a claim belonging to it. *Aronson v. Lewis*, Del.Supr., 473 A.2d 805, 811 (1984); *Pogostin v. Rice*, Del.Supr., 480 A.2d 619, 624 (1984). The derivative suit is a uniquely equitable remedy. *Levine v. Smith*, Del.

---

**12.** The long-recognized policy behind Section 327 is to prevent strike suits whereby an individual purchases stock in a corporation with purely litigious motives, *i.e.*, for the sole purpose of prosecuting a derivative action to attack transactions which occurred prior to the purchase of

stock. *Schreiber v. Bryan*, 396 A.2d at 516; *Harff v. Kerkorian*, Del.Ch., 324 A.2d 215, 218 (1974), *aff'd in part, rev'd in part*, Del.Supr., 347 A.2d 133 (1975); *Maclary v. Pleasant Hills, Inc.*, Del. Ch., 109 A.2d 830, 833 (1954).

Supr., 591 A.2d 194, 200 (1991). Conceptually, there are two aspects to a derivative action: (1) an effort by the shareholders against the corporation to compel it to sue; and (2) the underlying claim by the corporation, asserted by shareholders on its behalf, against those who caused the corporation legal injury. *Aronson,* 473 A.2d at 811. Because the shareholders sue in a representative capacity only, any damages recovered in the derivative suit inure directly to the corporation. *Kramer,* 546 A.2d at 351; R. Clark, *Corporate Law* 639–40 (1986). Accordingly, a plaintiff's derivative claim is regarded as a property right belonging to the corporation instead of the shareholder. *Lewis,* 477 A.2d at 1044; *Zapata Corp. v. Maldonado,* Del.Supr., 430 A.2d 779 (1981); *see also Aronson,* 473 A.2d at 813 ("a shareholder does not possess an independent individual right to continue a derivative action").

It is a fundamental principle of the Delaware General Corporation Law that directors, rather than shareholders, manage the business and affairs of the corporation. 8 *Del.C.* § 141(a); *Levine,* 591 A.2d at 200; *Spiegel v. Buntrock,* Del.Supr., 571 A.2d 767, 773 (1990). Consequently, the decision to pursue or refrain from undertaking a claim on behalf of the corporation is entrusted to the board of directors as within the ambit of its management responsibility. *Levine,* 591 A.2d at 200; *Spiegel,* 571 A.2d at 773; *Zapata,* 430 A.2d at 782. Despite the broad authority reposing in the board of directors, any exercise of that managerial power is tempered by the fiduciary duties which directors owe to the corporation and its shareholders. *Levine,* 591 A.2d at 200; *Kaplan v. Peat, Marwick, Mitchell & Co.,* Del.Supr., 540 A.2d 726, 729 (1988); *Aronson,* 473 A.2d at 811.

The derivative action is one method by which shareholders may seek redress on behalf of the corporation for an alleged harm caused by the misuse of managerial power. *Pogostin,* 480 A.2d at 624. Essentially, the derivative action "is a challenge to a board of directors' managerial power." *Spiegel,* 571 A.2d at 773. Indeed, by its very nature, the derivative action impinges upon the managerial authority of the board of directors. *Id.;*

*Aronson,* 473 A.2d at 811; *Pogostin,* 480 A.2d at 624. "There is, of course, the potential for conflict between the directors' power to manage the corporation and the shareholders' power to sue derivatively." *Kaplan,* 540 A.2d at 730.

In recognition that the shareholders' ability to commence a suit on behalf of the corporation inherently impinges upon the board's authority to manage the business and affairs of the corporation, Delaware law imposes certain prerequisites on a stockholder's right to sue in a derivative capacity. *Id.* For example, Chancery Rule 23.1 limits the right of a shareholder to prosecute a derivative suit to those situations where the stockholder has demanded that the board pursue a corporate claim and is met with a wrongful refusal, or where demand is excused because the directors are incapable of reaching an impartial decision to pursue such litigation. *Rales v. Blasband,* Del.Supr., 634 A.2d 927, 932 (1993). Like the continuous ownership requirement, "the demand requirements of Rule 23.1 represent a procedural restatement of the[ ] bedrock principles of Delaware corporate governance in the context of *standing* to maintain a derivative shareholder's suit." *Levine,* 591 A.2d at 200 (citing *Tandycrafts, Inc. v. Initio Partners,* Del.Supr., 562 A.2d 1162, 1166 (1989)).

The continuous ownership requirement similarly recognizes the power of the board to manage the business and affairs of the corporation. Essentially, a shareholder is permitted to intrude upon the authority of the board by means of a derivative suit only because his status as a shareholder provides an interest and incentive to obtain legal redress for the benefit of the corporation. Once the derivative plaintiff ceases to be a stockholder in the corporation on whose behalf the suit was brought, he no longer has a financial interest in any recovery pursued for the benefit of the corporation. As stated by the Seventh Circuit:

because a shareholder will receive at least an indirect benefit (in terms of increased shareholder equity) from any corporate recovery, he has an adequate interest in vigorously litigating the claim. A non-shareholder or one who loses his share-

holder interest during the course of litigation may lose any incentive to pursue the litigation adequately.

*Portnoy v. Kawecki Berylco Industries, Inc.,* 7th Cir., 607 F.2d 765, 767 (1979). In summary, because a plaintiff may lose his incentive to prosecute a suit by being divested of the property interest (shares of stock) in the corporation for whose behalf he acts, the derivative suit requires "continued as well as original standing." *Lewis,* 477 A.2d at 1047.

■ While the line of separation between derivative and corporate class actions is sometimes obscure, the derivative and appraisal actions are clearly distinct. The obvious difference between the two proceedings is that an appraisal petitioner sues in his own right instead of on behalf of the corporation. In an appraisal proceeding, the cause of action, as well as any recovery, belongs to the dissenting shareholders, not the corporation. *Kramer,* 546 A.2d at 351.

An appraisal petitioner does not seek to recover for harm done to the corporation, but rather, the shareholder merely seeks to obtain the fair value of his shares. In fact, the shareholder is divested of the usual rights incident to share ownership upon his demand for appraisal. *Cede & Co. v. Technicolor,* 542 A.2d at 1188; *Sabath,* 87 A.2d at 134. As stated, the requirement for continuous standing arises from the fundamental notion that the shareholder maintain a sufficient property interest in the corporation. Such a fundamental concern, however, does not arise in the context of an appraisal. In an appraisal action, the stockholder loses his traditional benefits of share ownership *ab initio.* In other words, under the appraisal statute, once a petitioner has perfected his right to an appraisal, he relinquishes his status as a shareholder and assumes the role of a quasi-creditor with a purely monetary claim against the corporation. *Sabath,* 87 A.2d at 132; *Kaye,* 395 A.2d at 375; *Braasch,* 199 A.2d at 766. The stockholder's change in status from equity owner to corporate creditor renders any standing requirement based on stock ownership an impossibility. As this Court previously noted, "procedural requirements of standing developed to control derivative actions have no relevance to individual

shareholder suits claiming a private wrong." *Cede & Co.,* 542 A.2d at 1188.

■ We conclude, therefore, that the continuous stock ownership requirement needed to maintain standing in derivative actions does not apply in the context of an appraisal proceeding. Any nexus between stock ownership and standing is controlled by the statutory scheme. Once a shareholder has perfected his claim for appraisal, he may not terminate that claim without complying with Section 262(k). The inadvertent tenders by Cede had no effect on its standing to participate in the appraisal award, so long as it remained a proper party to the appraisal action within the strictures of the statute.

### III

■ Subsequent to his initial appraisal decision, the Vice Chancellor, acting pursuant to 8 *Del.C.* § 262(h), entered judgment against Drummond for $180.67 per share, plus simple interest thereon at the rate of 12.5% per annum, payable from the date of the merger until the date of the final payment by Drummond. In a form entitled "Stipulation and Order as to Payment, Disbursement and Satisfaction of the Judgment," the parties thereafter stipulated and agreed that all share certificates must be surrendered to AmSouth by November 15, 1991, to be entitled to the appraisal award plus interest.

Once the Court of Chancery determined that Cede did not withdraw from the appraisal class by virtue of the mistaken tenders, the court ruled that Cede was entitled to the same rate of interest as the other stockholders who sought the appraisal remedy. Accordingly, the court directed Drummond to pay 12.5% simple interest upon $180.67 per share from the date of the merger until the date that Cede was paid the merger consideration for Shearson and Merrill Lynch. Drummond was also directed to pay Merrill Lynch and Shearson 12.5% simple interest upon $105.07 (the difference in merger price and appraisal value) from the date each petitioner was paid the merger consideration until the date the final amount was paid by Drummond.

On appeal, Drummond does not contest the rate of interest awarded to Cede accruing from the date of the merger to the date of the initial appraisal award. Rather, Drummond argues that the court erred in awarding Cede interest after November 15, 1991, the date each member of the appraisal class was required to tender share certificates to participate in the appraisal award. Drummond notes that but for the mistaken tenders, Drummond would have paid Cede on or before November 15, 1991. Drummond contends that no interest should accrue after this date for a mistake fully attributable to Cede via Shearson and Merrill Lynch. In other words, Drummond argues that Merrill Lynch and Shearson (through Cede) should not be permitted to profit, via court-awarded interest, from their own mistake.

The decision to award either pre-judgment or post-judgment interest is entirely within the discretion of the Court of Chancery. *Bell v. Kirby Lumber Corp.*, Del.Supr., 413 A.2d 137 (1980). This Court reviews an interest award in an appraisal proceeding for an abuse of discretion. *In re Shell Oil Co.*, Del.Supr., 607 A.2d 1213, 1221 (1992); *Rapid–American Corp. v. Harris*, Del.Supr., 603 A.2d 796, 808 (1992). Our review is limited to ascertaining whether the interest award was arbitrary or capricious. *Shell Oil*, 607 A.2d at 1221; *Pitts v. White*, Del.Supr., 109 A.2d 786, 788 (1954).

Here, the interest award was neither arbitrary nor capricious. "The purpose of interest is to fairly compensate the stockholders for their inability to use the money during the entire period in question." *Bell v. Kirby Lumber*, 413 A.2d at 149. The Vice Chancellor's interest award is consistent with this objective. Although Merrill Lynch and Shearson erred by causing Cede to tender the appraisal shares for the merger consideration, Drummond failed to discover this error. In view of Drummond's duty to monitor the tender of shares and verify shareholder status under the July Order, the mistake may be deemed mutual. Under the circumstances, we find no abuse of discretion in the Vice Chancellor's award of interest.

## IV

In conclusion, we hold that strict compliance with Section 262 is necessary for a shareholder to withdraw or be dismissed from an appraisal action. Once an appraisal petition is filed, those shareholders who have perfected appraisal rights may be dismissed from the action only upon approval by the Court of Chancery. A perfected claim for appraisal is not lost through an inadvertent tender of appraisal shares in the absence of compliance with the procedures explicitly set forth in Section 262. Finally, the continuous ownership requirement for standing in derivative actions does not limit the ability of shareholders to participate in appraisal proceedings so long as such shareholders are in compliance with statutory standards. Accordingly, the judgment of the Court of Chancery granting the motions of Merrill Lynch and Shearson on behalf of Cede to compel payment by Drummond of the appraisal award is AFFIRMED. We likewise AFFIRM the judgment of the Court of Chancery awarding the petitioners interest at the rate of 12.5% per annum.

DUFFY, Justice (Retired), dissenting:

I regret that I cannot join in the opinion in which a majority of the Court has invested so much research and scholarship. But, as with many legal issues, the answer often depends on how the question is defined. As I see it, the determinative question which this appeal presents concerns the stockholder requirements of 8 *Del.C.* § 262.

Before discussing the statute, I want to note that the minority stockholders of Alabama By–Products Corporation (ABC) were cashed out at $75.60 per share; in the appraisal proceeding the Court of Chancery fixed the fair value of each share at $180.67 and this Court affirmed that ruling. The difference between the cash-out price and the fair value of each share is shocking, and that lends equitable persuasion to the judgment of this Court and the Court of Chancery.

But the appraisal remedy is entirely a creation of statute, *Alabama By–Products Corp. v. Neal*, Del.Supr., 588 A.2d 255, 256 (1991), and the majority's ruling is based, not

on equitable principles, but on the construction and application of Section 262(d) and (k).

The purpose of Section 262 is to give a stockholder who dissents from a merger a judicial remedy by which an independent determination is made of the fair value of the shares. *Neal,* 588 A.2d at 256.

At least from the time of *Salt Dome Oil Corporation v. Schenck,* Del.Supr., 41 A.2d 583 (1945), until now, a "stockholder" in an appraisal proceeding has meant "only the registered holder of stock." 41 A.2d at 589. That has been the "consistent" view of this Court. *ENSTAR Corp. v. Senouf,* Del.Supr., 535 A.2d 1351, 1354 (1987); [13] *see also Matter of ENSTAR Corp.,* Del.Supr., 604 A.2d 404, 412 (1992). Indeed, that requirement is codified by the specific language of Section 262(a), which states: "As used in this section, the word 'stockholder' means a holder of record in a stock corporation."

It is, I believe, undisputed that Cede & Co. (Cede), and only Cede, was the record holder of the stock in issue for which appraisal was sought. To state it negatively: neither Shearson Lehman nor Merrill Lynch, nor the customers of either of them, was, at any relevant time, a registered or record holder of the stock.

Demand for appraisal and perfection of that right was, in each instance, made by Cede as the record stockholder. And at the time the demands were perfected, the rights and duties of the stockholder and the corporation were fixed. *Compare Southern Production Co. v. Sabath,* Del.Supr., 87 A.2d 128, 132 (1952).

Without doubt, Cede had contractual (and perhaps other) obligations to Shearson Lehman and Merrill Lynch which, in turn, had obligations to their respective customers. But under Section 262 and long-settled case law, ABC had no appraisal obligation to the brokerage houses, bank depositories or other nominees which investors had chosen to hold their respective shares. *Salt Dome,* 41 A.2d at 589; *Senouf,* 535 A.2d at 1354; and *ENSTAR,* 604 A.2d at 412. Cede could, of course, select whatever agencies and counsel it chose to process and litigate its appraisal rights, but it cannot make Shearson Lehman nor Merrill Lynch a "stockholder" nor give either of them separate status having independent significance.

But the majority seems to regard Cede's record holding of ABC shares as divided into two or more parts. How or when that was done is not described. Certainly the Stockholder Information Form submitted by Cede to ABC could not create a Section 262 legal duty on the corporation to thereafter deal with Shearson Lehman and Merrill Lynch as it would with a record holder. And yet that is the clear implication if ABC is liable because the brokers were paid without Court approval.[14]

Given the possible relationships which may lay behind a stockholder of record, the responsibility for "overseeing" the surrender of shares after a merger may well be more complex and burdensome than the majority anticipates. One may reasonably ask, for example, does the duty of oversight oblige a corporation to ask a nominee: for whom do you act?—thus piercing the veil of record ownership.

The majority states that it continues to recognize the force of *Salt Dome, ENSTAR* and similar cases holding that a corporation may look to the corporate books as the sole evidence of stock ownership. But, respectfully, its decision here fixes liability on ABC, (a) for failing to look beyond Cede's record ownership to the stockbrokers who had deposited the shares with Cede; and (b) for failure to regard the brokers as "stockhold-

---

**13.** The Court quoted and reaffirmed the policy reasons stated in *Salt Dome* as to why the corporation "may rightfully look to the corporate books as the sole evidence of membership," *i.e.,* the record holder of shares. 535 A.2d at 1356.

**14.** The rather curious caption of the case describes the petitioners as follows:

CEDE & CO. acting on behalf of Shearson Lehman Brothers, Inc. and Amy N. Ager and MERRILL LYNCH, PIERCE, FENNER & SMITH, acting on behalf of CEDE & CO.

Implicitly, that accurately states that this is Cede's case—while it acts for Shearson Lehman and Merrill Lynch acts for it. In short, only Cede's rights are asserted and those are based on its status as the record holder of ABC shares.

ers" under the dismissal prohibition in Section 262(k).

In sum, Cede was the only stockholder in this proceeding and it never withdrew from this litigation. Indeed, it is still in the case. Thus, "no appraisal proceeding in the Court of Chancery [has been] dismissed as to any stockholder." *See* Section 262(k). As I see it, the statute is not implicated because Cede remains in Court, subject to its jurisdiction and responsible for any violation it may have made of Section 262.

\* \* \* \* \* \*

I agree that strict compliance with Section 262 is essential and when it is applicable it should be specifically enforced.

If the policy purpose of Section 262(k) is therapeutic, that is, to bar a stockholder and the corporation from agreeing, without court approval, that some shares of an ongoing claim for appraisal are withdrawn, then the statute should be amended to say so. But the plain language of Section 262(k) bars only a "dismiss[al] as to any stockholder." When, as here, there is neither a dismissal nor a record stockholder involved, the language does not fit the facts.

In its present form, Section 262 probably does not recognize the common and practical use of nominees in stock ownership and the realities of relationships behind the corporate record. If so, then change is desirable; but creation of a duty of "oversight" by the corporation is not the way to go. Under the present statute, orderliness and certainty of an appraisal proceeding will be maintained if, as heretofore, a corporation's legal duty is to deal only with the stockholder of record. *Cf. Schneyer v. Shenandoah Oil Corporation,* Del.Ch., 316 A.2d 570 (1974). Its relationship with beneficial owners and other nominees should be governed by other principles of law.

\* \* \* \* \* \*

I would reverse the Order of the Court of Chancery and direct that judgment be entered for the respondents.

