**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | |
|---|---|
| Sunrise Partners Limited Partnership, | |
| Petitioner, | C.A. No. 12609-VCS |
| v. | |
| Rouse Properties, Inc., | |
| Respondent. | |
| Hudson Bay Master Fund Ltd., | |
| Petitioner, | C.A. No. 12611-VCS |
| v. | |
| Rouse Properties, Inc., | |
| Respondent. | |
| DBW Lycurgus LLC, | |
| Petitioner, | C.A. No. 12617-VCS |
| v. | |
| Rouse Properties, Inc., | |
| Respondent. | |
| Levcap Alternative Fund, LP; Ulysses Offshore Fund LTD; Ulysses Partners LP; David Levin 1992 Trust (a/k/a Trust U/A/D 12/4/92 FBO David J. Levin); HAL 63 Partnership – PW (a/k/a HAL 63 | C.A. No. 12674-VCS |

Partnership, L.P.); The David J. Levin 2002 Trust; Maxwell Chase Levin Trust; Zachariah Nicholas Levin Trust dated December 28, 2010 (a/k/a Zachariah Nicholas Levin Trust); The David Levin 2001 Trust (a/k/a The David J. Levin 2001 Trust); Sophie Valentine Chiara Trust U/W Judith Chiara Dated N (a/k/a Sophie Valentine Chiara Trust U/W Judith L. Chiara); Julian Arthur Chiara Trust UWO Judith Chiara Dated Nove (a/k/a Julian Arthur Chiara Trust U/W Judith L. Chiara); Christopher Evan Beaty Trust UWO Judith Chiara Dated No (a/k/a Christopher Evan Beaty Trust U/W Judith L. Chiara); Trust U/A/D 10/11/63 FBO Louise P. Belsky (a/k/a Trust U/A/D 10/11/63 Louise P. Belsky); The Jean L. Troubh Trust U/A/D 12/18/89; Trust U/A/D 10/11/63 FBO Elisabeth P. Doyle; Lucas Marco Chiara Trust UWO Judith Chiara Dated Novemb (a/k/a Lucas Marco Chiara Trust U/W Judith L. Chiara); Trust U/W Judith L. Chiara FBO Ryan Thomas Beaty (a/k/a Ryan Thomas Beaty Trust U/W Judith L. Chiara); Kristin Beaty Paszkiewicz Trust UWO Judith Chiara Dated (a/k/a Kristin Beaty Paszkiewicz Trust U/W Judith L. Chiara); Karma Alexander Mason Trust UWO Judith Chiara Dated Nov (a/k/a Karma Alexander Mason Trust U/W Judith L. Chiara); Jean L. Troubh Family 2000 Trust; Audrey S. Levin; Jessica Perry Fertig Trust UWO Judith Chiara Dated Nove (a/k/a Jessica Perry Fertig Trust U/W Judith L. Chiara); Benet Polikoff and Margaret Polikoff Trust; 1/3/55 Trust U/W Carl M. Loeb FBO Jean L. Troubh – PW (a/k/a Trust U/W Carl M. Loeb FBO

Jean L. Troubh); The Belsky-Doyle-Polikoff-Troubh Family Trust; Trust U/A/D 10/11/63 FBO Benet S. Polikoff; Trust U/W Judith L. Chiara FBO Aliana R. Beaty (a/k/a Aliana Rae Beaty Trust U/W Judith L. Chiara); John Levin, Jerome Manning TTEE TR FBO Frances Perry (FP06) (a/k/a Trust U/A/D 10/16/61 JLL FBO Frances Beaty Perry); John Levin, Jerome Manning TTEE TR FBO Daniela Chiara (ZZDC06) (a/k/a Trust U/A/D 10/16/61 JLL FBO Daniela Chiara); John Levin, Jerome Manning TTEE JLL TR (ZZCC06) (a/k/a Trust U/A/D 10/16/61 JLL FBO Charles Chiara); John L Loeb, Jerome Manning TTEE JLL 61 TR FBO NICHOLAS (ZZJL06) (a/k/a Trust U/A/D 10/16/61 JLL FBO Nicholas Loeb); Jerome Manning, J Levin TTEE A Lehman TR (ZZRB02) (a/k/a Trust U/A/D 9/9/64 FBO Richard Beaty); Jerome Manning, J Levin TTEE A Lehman Tr (ZZRB02) (a/k/a Trust U/A/D 9/9/64 FBO Daniela Chiara); Jerome Manning, J Levin TTEE A Lehman Tr (ZZRB02) (a/k/a Trust U/A/D 9/9/64 FBO Anne P. Beaty); Jerome Manning, J Levin TTEE A Lehman Tr (ZZRB02) (a/k/a Trust U/A/D 9/9/64 FBO Charles Chiara); Jerome Manning, J Levin TTEE A Lehman Tr (ZZRB02) (a/k/a Trust U/A/D 9/9/64 FBO Frances Beaty Perry); Jerome Manning, J Levin TTEE A Lehman Tr (ZZRB02) (a/k/a Trust U/A/D 9/9/64 FBO John L. Beaty); Levin Manning Beaty TTEE J L Chiara TR (ZZRB05) (a/k/a Trust U/W Judith L. Chiara FBO Richard Beaty); Levin Manning Beaty TTEE J L Chiara TR (ZZRB05) (a/k/a

Trust U/W Judith L. Chiara FBO John L. Beaty); Levin Manning Beaty TTEE J L Chiara TR (ZZFP05) (a/k/a Trust U/W Judith L. Chiara FBO Frances Beaty Perry); Levin Manning Beaty TTEE J L Chiara TR (AB05) (a/k/a Trust U/W Judith L. Chiara FBO Anne P. Beaty); Levin Manning Beaty TTEE J L Chiara TR (ZZRB05) (a/k/a Trust U/W Judith L. Chiara FBO Charles Chiara); The Jessica Levin 2001 Trust; The Jacob Thomas Carter Trust (a/k/a The Jacob Thomas Carter 2005 Trust); The Emily Renee Carter Trust (a/k/a The Emily Renee Carter 2005 Trust); The Lisa Louise Carter Trust (a/k/a The Lisa Louise Carter 2005 Trust); The Jennifer Carter 2005 Family Trust (a/k/a The Jennifer Levin Carter 2005 Family Trust); The Talia Bela Chorowsky Trust; The Daniel Silver Levin Annual Exclusion Trust; The Noa Rachel Chorowsky Trust; The Allison Levin Carter Trust (a/k/a The Allison Levin Carter 2005 Trust); John Levin John T Beaty, J Manning TTEE FLL TR FBO Charles Chiara (a/k/a Trust U/I/D 6/1/74 FBO Charles Chiara); John Levin John T Beaty J Manning TTEE FLL TR FBO John L Beaty (a/k/a Trust U/I/D 6/1/74 FBO John L. Beaty); John Levin John Loeb Jr, Jerome Manning TTEE (ZZJL03) (a/k/a Trust U/I/D 6/1/74 FBO Nicholas Loeb); John Levin John T Beaty, J Manning TTEE 74 TR FBO Alexandra (a/k/a Trust U/I/D 6/1/74 FBO Alexandra Loeb Driscoll); John Levin John T Beaty, J Manning TTEE FLL Trust (a/k/a Trust U/I/D 6/1/74 FBO Frances Beaty Perry); John Levin, Jerome Manning TTEE TR FBO John Beaty

(ZZJB07) (a/k/a Trust U/A/D 10/16/61 FLL FBO John L. Beaty); John Levin, Jerome Manning TTEE JLL 61 TR FBO Alexandra Loeb Driscoll (a/k/a Trust U/A/D 10/16/61 FLL FBO Alexandra Loeb Driscoll); Jerome A Manning John A Levin, Arthur L Loeb TTEE (ZZAL02) (a/k/a Trust U/W Frances L. Loeb FBO Arthur L. Loeb); Arthur Loeb Foundation Inc. C/O Arthur Loeb (a/k/a Arthur Loeb Foundation Inc.); Judith L Chiara Char Fund # 3 C/O Levin Capital Strategies (a/k/a Judith L. Chiara Charitable Fund, Inc.); Jerome A Manning TTEE Louis D'almeida CRT (a/k/a Louis D'Almeida Charitable Remainder Trust); Manning Levin Beaty TTEE TR U/W FLL FBO Anne P Beaty (a/k/a Trust U/W Frances L. Loeb FBO Anne P. Beaty); Manning Levin Beaty TTEE TR U/W FLL FBO Frances B Perry (a/k/a Trust U/W Frances L. Loeb FBO Frances Beaty Perry); John Levin J Manning, John Loeb Jr TTEE TR U/W FLL FBO Nicholas Loeb (a/k/a Trust U/W Frances L. Loeb FBO Nicholas Loeb); Manning Levin Loeb TTEE TR U/W FLL FBO Alexandra L Driscoll (a/k/a Trust U/W Frances L. Loeb FBO Alexandra Loeb Driscoll); Manning Levin Loeb TTEE TR U/W FLL FBO Kristin (a/k/a Trust U/W Frances L. Loeb FBO Kristin Beaty Paszkiewicz); Manning Levin Beaty TTEE TR U/W FLL FBO Chrisoph Beaty (a/k/a Trust U/W Frances L. Loeb FBO Christopher Beaty); Manning Levin Beaty TTEE TR U/W FLL FBO Ryan Beaty (a/k/a Trust U/W Frances L. Loeb FBO Ryan Beaty); Manning Levin Beaty TTEE TR U/W FLL FBO John L Beaty (a/k/a Trust U/W

Frances L. Loeb FBO John L. Beaty); Manning Levin Beaty TTEE TR U/W FLL FBO Charles Chiara (a/k/a Trust U/W Frances L. Loeb FBO Charles Chiara); John Levin, Jerome Manning TTEE Trust FBO Sophie V. Chiara U/W 5/17/96 (a/k/a Trust U/W Frances L. Loeb FBO Sophie Valentine Chiara); John Levin John T Beaty, J Manning TTEE J L Chiara TR FBO Daniela Chiara (a/k/a Trust U/W Judith L. Chiara FBO Daniela Chiara); John Levin John Loeb Jr, Jerome Manning TTE (ZZAL03) (a/k/a Trust U/I/D 6/1/74 FBO Arthur L. Loeb); John Levin John T. Beaty, J Manning TTEE (ZZRB04) (a/k/a Trust U/I/D 6/1/74 FBO Richard Beaty); John Levin John T Beaty, J Manning TTEE FLL Trust ZZAB04 (a/k/a Trust U/I/D 6/1/74 FBO Anne P. Beaty); Levin Beaty Manning Daniela Chiara TTEE ZZDC04 (a/k/a Trust U/I/D 6/1/74 FBO Daniela Chiara); Richard N Beaty Jr (LCS) (a/k/a Richard N. Beaty, Jr.); Daniela Chiara; Jerome Manning, J Loeb Jr TTEE Trust FBO Arthur Loeb (ZZAL05) (a/k/a Trust U/I/D 12/31/40 FBO Arthur L. Loeb); John Loeb Jr, Jerome Manning TTE Trust FBO Arthur Loeb (a/k/a Trust U/A/D 9/9/64 FBO Arthur L. Loeb); John Loeb Jr, J Manning TTEE Trust FBO John Loeb Jr (a/ka/ Trust U/A/D 9/9/64 FBO John Loeb Jr); Mr. Arthur L Loeb (a/k/a Arthur L. Loeb); John A. Levin, John Loeb Jr TTEE U/W CML Tr FBO Arthur Loeb ZZAL06 (a/k/a Trust U/W Carl M. Loeb FBO Arthur L. Loeb); John Levin, Jerome Manning TTEE Tr FBO Richard Beaty Jr (RB06) (a/k/a Trust U/A/D 10/16/61 JLL FBO Richard N. Beaty); John Levin,

Jerome Manning TTEE Tr JLL 61 FBO John L Beaty (ZZJB06) (a/k/a Trust U/A/D 10/16/61 JLL FBO John L. Beaty); John Levin, Jerome Manning TTEE Tr JLL 61 FBO Ann P Beaty (ZZAB06) (a/k/a Trust U/A/D 10/16/61 JLL FBO Anne P. Beaty); The Lisa Louise Carter Trust; Ann L. Bronfman Fam Char Trust (a/k/a Ann L. Bronfman Family Charitable Trust); Matthew Bronfman; Stacy Bronfman (a/k/a Stacey Bronfman); Tr U/W Henry A. Loeb FBO Betty Pearson Clause 6 (a/k/a Trust U/W Henry A. Loeb FBO Betty Pearson); Tr U/W Judith L. Chiara FBO Stroock & Stroock & Lavan (a/k/a Trust U/W Judith L. Chiara FBO Rosa Anna Iaia); Tr U/W Judith L. Chiara FBO Stroock & Stroock & Lavan (a/k/a Trust U/W Judith L. Chiara FBO Lawrence Birns); TR UWO Carl M. Loeb FBO E L Levin (a/k/a Trust U/W Carl M. Loeb FBO Elisabeth L. Levin); Jessica Levin 2002 Trust (a/k/a The Jessica Levin 2002 Trust); Henry L. Levin; The Jacob Thomas Carter Trust; The Henry Levin 2001 Trust (a/k/a The Henry L. Levin 2001 Trust); The Elise E Lieberman Trust (a/k/a The Elise Evelyn Lieberman Trust); The Jennifer Levin Carter 2001 Family Trust (a/k/a The Jennifer Levin Carter 2001 Trust); The Treetops Foundation; The Allison Levin Carter Trust; HJJD Associates, a partnership c/o Henry Levin (a/k/a HJJD Associates, L.P.); Trust 12/4/92 FBO Henry L. Levin (a/k/a Trust U/A/D 12/4/92 FBO Henry L. Levin); The Elisabeth & John Levin Trust (a/k/a Trust U/A/D 12/4/92 FBO Jessica E. Levin); Elisabeth Levin (a/k/a Elisabeth L.

Levin); The Emily Renee Carter Trust; Gabriela Talia Bronfman Legacy Trust UW Ann L. Bronfman (a/k/a Gabriela Talia Bronfman Legacy Trust U/W Ann L. Bronfman); Gabriela T Bronfman appointed Tr UW Ann L. Bronfman (a/k/a Gabriela Talia Bronfman Appointed Trust U/W Ann L. Bronfman); Jeremy Samuel Bronfman Legacy Tr UW Ann L. Bronfman (a/k/a Jeremy Samuel Bronfman Legacy Trust U/W Ann L. Bronfman); Christine Davies Special Account – SD (a/k/a Christine Davies I/T/F Steffan Davies); Coby B. Bronfman Appointed Tr UWO Ann L. Bronfman (a/k/a Coby Benjamin Bronfman Appointed Trust U/W Ann L. Bronfman); Fiona M. Woods; Trust 12/4/92 FBO Jennifer Levin Carter (a/k/a Trust U/A/D 12/4/92 FBO Jennifer Levin Carter); Adam R. Bronfman Fam Foundation Inc. (a/k/a Adam R. Bronfman Family Foundation Inc.); and Coby Benjamin Bronfman Legacy Tr UW Ann L. Bronfman (a/k/a Coby Benjamin Bronfman Trust U/W Ann L. Bronfman),

Petitioners,

v.

Rouse Properties, Inc.,

Respondent.

| | |
|---|---|
| Brookdale International Partners, L.P. And Brookdale Global Opportunity Fund, <br><br> Petitioners, <br><br> V. <br><br> Rouse Properties, Inc., <br><br> Respondent. | C.A. No. 12549-VCS |

# MEMORANDUM OPINION

Date Submitted:  November 4, 2016
Date Decided:  December 8, 2016

Stuart M. Grant, Esquire, Cynthia A. Calder, Esquire, and Kimberly A. Evans, Esquire of Grant & Eisenhofer P.A., Wilmington, Delaware, Attorneys for Petitioners Sunrise Partners Limited Partnership, Hudson Bay Master Fund Ltd., DBW Lycurgus LLC, Levcap Alternative Fund LP, et al.

Stephen E. Jenkins, Esquire, Andrew D. Cordo, Esquire, and Marie M. Degnan, Esquire of Ashby & Geddes, PA, Wilmington, Delaware, Attorneys for Petitioners Brookdale International Partners, L.P. and Brookdale Global Opportunity Fund.

Kevin G. Abrams, Esquire and Daniel R. Ciarrocki, Esquire of Abrams & Bayliss LLP, Wilmington, Delaware, and John A. Neuwirth, Esquire and Evert J. Christensen, Jr., Esquire of Weil, Gotshal & Manages LLP, New York, New York, Attorneys for Respondent Rouse Properties, Inc.

**SLIGHTS, Vice Chancellor**

After a merger closes, it is not uncommon for several dissenting stockholders to file separate petitions with this Court seeking statutory appraisal of the fair value of their shares. It is, however, uncommon for those stockholders not to agree on the manner in which the multiple petitions should be consolidated and then prosecuted. Unfortunately, this is that uncommon case. Two camps of appraisal petitioners, representing five separate petitioners, have been unable to agree on a unified leadership structure or a unified approach to prosecuting the appraisal petitions. When negotiations among the camps reached an impasse, one camp filed a motion with the Court to appoint lead counsel. The other camp opposes the motion.

For the reasons that follow, the motion is granted. I am satisfied that Delaware's appraisal statute does not prohibit the Court from appointing lead counsel in an appraisal proceeding even when some petitioners object. This authority is an extension of the Court's inherent power to manage its cases in a manner that attempts to ensure efficient, consistent and fair outcomes for all concerned. Since appraisal proceedings are in the nature of class actions, I have drawn heavily from this Court's jurisprudence regarding the efficient management of class actions in reaching my decision here, including the guidelines this Court has established to assist in the selection of an appropriate class leadership structure.

1

While I have determined that it is best to appoint lead counsel in this instance, I emphasize that this is a case-specific determination that reflects my exercise of discretion in a particular case. As noted, in most instances, appraisal petitioners will agree on the appropriate means to prosecute their respective petitions. That is to be encouraged. When the various petitioners do not agree, there may well be cases where the Court determines it is best to allow each petitioner to chart its own course without consolidation or coordination. This is not such a case.

## I. BACKGROUND

On July 6, 2016, Rouse Properties, Inc. ("Rouse") and BSREP II Retail Holdings Corp., an affiliate of Brookfield Asset Management, Inc. (collectively, "Brookfield"), closed a merger by which Brookfield acquired Rouse in an all-cash transaction for $18.25 per share (the "Merger"). Following the Merger, on July 11, 2016, Petitioners, Brookdale International Partners, L.P. and Brookdale Global Opportunity Fund (collectively, "Brookdale"), the beneficial owners of approximately 21% of the shares that demanded appraisal, filed their Verified Petition for Appraisal of Stock. On August 1 and August 18, 2016, Sunrise Partners Limited Partnership, entities and individuals affiliated with Levin Capital Strategies, LP, Hudson Bay Master Fund Ltd. and DBW Lycurgus LLC (collectively the "Majority Petitioners") each filed separate petitions for appraisal.

2

The Majority Petitioners represent the beneficial owners of approximately 75% of the shares entitled to appraisal. In all, the five separate actions represent 6,721,182 shares of Rouse stock. All petitions seek a determination of the fair value of Rouse as a going concern as of July 6, 2016.

Brookdale is represented by Ashby & Geddes, PA ("A&G"). The Majority Petitioners are represented by Grant & Eisenhofer P.A. ("G&E").[1] On August 25, 2016, A&G contacted G&E to discuss logistics for moving the five separate actions forward by consolidating the actions and establishing a leadership structure. During these discussions, A&G made it clear that, notwithstanding consolidation, Brookdale would insist that it be permitted to engage and call its own valuation witness at trial and that it otherwise be permitted to separate from the litigation path chosen by the Majority Petitioners should it choose to do so. Brookdale also made it clear that it would agree to compensate only its own chosen counsel, A&G, even if G&E was to take on the role of lead counsel. G&E objected to Brookdale's conditions and, despite further efforts to work out alternative arrangements, the parties could not reach agreement on a leadership structure.

---

[1] Brookdale consulted with G&E about representation but ultimately elected to engage A&G. It appears that the fee structure proposed by G&E was contingent upon the outcome of the proceedings while A&G agreed to bill on a non-contingent basis.

On September 26, 2016, the Majority Petitioners filed a Motion to Consolidate and for Appointment of Lead Counsel (the "Motion"). In the Motion, the Majority Petitioners and G&E contend that all petitioners will benefit from a coordinated and unified approach to the litigation. While it is willing to listen to A&G and Brookdale, and to take their views into account when formulating litigation strategy, G&E maintains that it should not be placed in a leadership structure where Brookdale can call its own shots if and when it chooses. Nor should the Court sanction a leadership structure where Brookdale may choose not to pay G&E for its work on behalf of all stockholders entitled to appraisal. According to the Majority Petitioners and G&E, the various strands of autonomy Brookdale seeks to impose on the leadership structure would encourage "free riding" and create other negative incentives for Brookdale and for future appraisal petitioners.

Brookdale and A&G oppose the Motion. They argue that the Court cannot force them to accept G&E as lead counsel because such a court-ordered leadership structure would deny Brookdale its statutory right to "participate fully" in this appraisal proceeding.[2] They also contend that an order appointing G&E as lead counsel would deny Brookdale its right to be represented by its counsel of choice. Finally, as for the argument that denying the Motion might create negative

---

[2] 8 *Del. C.* § 262(h).

4

incentives, Brookdale and A&G maintain that they have no intention of "free riding" here and they assure the Court that they will carry their fair share of the litigation load.

## II. ANALYSIS

I address the Motion in four parts. First, I address the uncontested motion to consolidate the various appraisal actions relating to Rouse. Second, I consider whether Brookdale is correct that Delaware's appraisal statute does not allow the Court to appoint a leadership structure over the objection of a stockholder who appears to have properly perfected a claim for appraisal. Third, I consider whether the Court has the inherent power to appoint a leadership structure that it believes will further the efficient, consistent and fair litigation of all pending petitions for appraisal. In this regard, I consider whether there is anything unique about appraisal actions that would justify managing these actions differently than the manner in which this Court manages class actions. Finally, I draw on this Court's jurisprudence in the class action context to determine the appropriate leadership structure in this case.

### A. The Separate Petitions Will Be Consolidated

None of the parties dispute that the five separate appraisal petitions should be consolidated pursuant to Court of Chancery Rule 42(a), and for good reason. The actions share common questions of law and fact and in each the petitioner

seeks the identical relief – a declaration of the fair value of Rouse as a going concern at the time of the merger. For these reasons, separate appraisal actions relating to the same entity are typically prime candidates for consolidation. This case is no exception. The motion to consolidate will be granted.

**B.      The Appraisal Statute Does Not Prohibit the Appointment of Leadership Over the Objection of a Petitioner Who Otherwise Has Standing to Pursue Appraisal of its Shares**

Brookdale argues that the Court lacks authority to "override an active appraisal petitioner's choice of counsel by appointing sole lead counsel over the petitioner's objection and thereby deprive the petitioner of its statutory right to participate in the litigation."[3] In support of this argument, Brookdale points to a provision in 8 *Del. C.* § 262(h) which provides that a stockholder whose name appears on the surviving corporation's verified list of all stockholders who have demanded payment for their shares "may participate fully in all proceedings until it is finally determined that such stockholder is not entitled to appraisal rights under this section." After carefully reviewing this provision and other relevant portions of Delaware's appraisal statute, I am satisfied that the statutory language highlighted by Brookdale does not support its contention that the appointment of

---

[3] Opp'n of Pet'rs Brookdale International Partners, L.P. and Brookdale Global Opportuiny Fund to Mot. for Consolidation and Appointment of Lead Counsel at 9.

lead counsel would somehow deprive it of its statutory right to participate fully in this appraisal action as contemplated by the statute.

"Words and phrases [in Delaware statutes] shall be read with their context and shall be construed according to the common and approved usage of the English language."[4]  When words within a statute are undefined, Delaware courts frequently look to standard dictionary definitions for guidance.[5] Merriam-Webster's Dictionary defines the verb "participate" as follows: "to take part; to have a part or share in something."[6]

Nothing in the Court's order appointing a leadership structure will deny Brookdale of its right to "take part" fully in this appraisal litigation along with all of the other petitioners.  Regardless of which law firm is on point to prosecute the petitions for appraisal, Brookdale will remain an active petitioner and its claim for appraisal will be protected.  The issue in appraisal is fair value; nothing more and nothing less.[7]  In this regard, Brookdale's interests are perfectly aligned with all

---

[4] 1 *Del. C.* § 303.

[5] *Ingram v. Thorpe*, 747 A.2d 545, 548 (Del. 2000).

[6] *Participate*, <u>Merriam-Webster's Collegiate Dictionary</u> (10th ed. 1996).  To "direct," on the other hand, means "to point out, prescribe or determine a course or procedure." *Direct*, <u>Merriam-Webster's Collegiate Dictionary</u> (10th ed. 1996).

[7] *Cede & Co. v. Technicolor, Inc.*, 542 A.2d 1182, 1187 (Del. 1988) ("[I]n a section 262 appraisal action the only litigable issue is the determination of the value of the appraisal petitioners' shares on the date of the merger. . .").

other petitioners seeking appraisal; they all share an absolute incentive to obtain the highest possible value for their Rouse shares. It appears that Brookdale has perfected its rights to appraisal and that it will hereafter "participate" fully in this appraisal action. It will not, however, "direct" the course of this consolidated litigation on behalf of the petitioners and the statute does not guarantee it a right to do so.

In addition to considering the "common and approved" usage of words within a statute, Delaware courts are directed to consider "context" when construing the statute's meaning.[8] Several provisions within Delaware's appraisal statute support the conclusion that the statute's use of the phrase "participate fully" is not intended to confer a right upon all individual appraisal petitioners to litigate their claims separately or to direct the course of the litigation should the Court determine to consolidate separately filed petitions. Section 262(h), for example, provides that "[a]fter the Court determines the stockholders entitled to an appraisal, the appraisal proceeding shall be conducted in accordance with the rules of the Court of Chancery. . . ."[9] Court of Chancery Rule 42(a), in turn, which governs consolidation, provides that "[the Court] may make such orders concerning

---

[8] *See* 1 *Del. C.* § 303 ("Words and phrases [in Delaware statutes] shall be read with their context. . . .").

[9] 8 *Del. C.* § 262(h).

8

[consolidated] proceedings … as may tend to avoid unnecessary costs or delay."[10] An order consolidating multiple appraisal actions and appointing lead counsel to prosecute the action serves the function of "avoid[ing] unnecessary costs and delay."

After incorporating the Court of Chancery Rules, Section 262(h) goes on to state that "[a]ny stockholder whose name appears on the list filed by the surviving or resulting corporation pursuant to subsection (f) of this section and who has submitted such stockholder's certificates of stock to the Register in Chancery, if such is required, may participate fully in all proceedings until it is finally determined that such stockholder is not entitled to appraisal rights under this section."[11] Section 262(f), in turn, provides that "[u]pon the filing of [an appraisal] petition by a stockholder, service of a copy thereof shall be made upon the surviving or resulting corporation, which shall within 20 days after such service file in the office of the Register in Chancery in which the petition was filed a duly verified list containing the names and addresses of all stockholders who have demanded payment for their shares . . ."[12] Thus, the "participate fully" language in Section 262(h) refers to "any stockholder whose

---

[10] Ct. Ch. R. 42(a).

[11] 8 *Del. C.* § 262(h).

[12] 8 *Del. C.* § 262(f).

name appears on the list filed pursuant to subsection (f)," regardless of whether *vel non* the stockholder actually filed a petition for appraisal in this Court.

When read together, and in context, Sections 262(f) and (h) do not support Brookdale's position that Section 262(h) is intended to provide an appraisal petitioner with the right to exercise complete autonomy in the prosecution of its petition or to prevent the appointment of lead counsel in consolidated appraisal litigation. Since the statute recognizes that a dissenting stockholder who has chosen not to file a petition can "participate fully" in the proceedings, as that phrase appears in the statute, it is not reasonable to interpret the phrase as guaranteeing a dissenting stockholder who has filed a petition the right to separately prosecute the petition in consolidated appraisal litigation with the counsel of its choosing.

Finally, I note that Section 262(j) expressly contemplates that appraisal petitioners may be held accountable for attorney's fees beyond those charged by their individual counsel.[13] Specifically, the statute acknowledges that counsel who leads the effort on behalf of the "appraisal class" should be compensated by the "entire appraisal class."[14] That is all G&E is seeking here.

---

[13] 8 *Del. C.* § 262(j).

[14] *In re Appraisal of Dell, Inc.*, 2016 WL 6069017, at*3 (Del. Ch. Oct. 17, 2016) ([Section 262(j)] says that you can tax and allocate costs and expenses pro rata across the entire appraisal class. That's in the statute."); *Id.* ("The fees and expenses at the end

Brookdale's argument that it will be denied its statutory right to "participate fully" in these proceedings if the Court appoints G&E as lead counsel is not supported by a reasonable interpretation of the appraisal statute. Nothing in the statute stands as an impediment to the Court's exercise of either its authority under Court of Chancery Rule 42 to enter orders that will "tend to avoid unnecessary costs or delay" or its inherent power to manage its docket.[15]

## C.    Appraisal Actions Are in the Nature of a Class Action

Brookdale emphasizes that appraisal actions are not, in fact, susceptible to certification as class actions and, therefore, the Court should not look to its practices in managing class actions when deciding whether to appoint lead counsel here. Brookdale is correct as a matter of substantive law that this Court will not certify a class of dissenting stockholders who seek statutory appraisal. Even so, our courts have long-recognized that, procedurally, "an appraisal action is a proceeding in the nature of a class suit."[16] Three examples illustrate the point.

---

under 262(j) can be taxed against the entire appraisal class pro rata because that's what's fair. It's a classic application of common-fund principles. . . . "); *Matter of Appraisal of Shell Oil Co.*, 1992 WL 321250, at *2 (Del. Ch. Oct. 30, 1992) ("Pursuant to 8 *Del. C.* § 262(j), the attorney fees will be assessed *pro rata* from all the shares entitled to share in the appraisal award.").

[15] *See Pfizer, Inc. v. Warner-Lambert Co.*, 1999 WL 33318818, at *1 (Del. Ch. Dec. 22, 1999) ("This Court has the inherent authority to control its own docket, and to manage the scheduling of multiple lawsuits arising from the same set of operative facts.").

[16] *Ala. By-Prods. Corp. v. Cede & Co.*, 657 A.2d 254, 260 (Del. 1995) (citing *Southern Production Co., Inc. v. Sabath*, 32 Del. Ch. 497, 508 (Del. 1952)).

11

First, Section 262(k) requires approval of the Court before an appraisal proceeding can be dismissed as to any stockholder.[17] The purpose of this requirement is to avoid the harm that might be caused to other dissenting stockholders if one petitioner settles at a premium while leaving others to fend for themselves and possibly receive less value for their shares.[18] This same concern that defendants might attempt to "pick-off" the class representative with a premium settlement at the expense of other class members is one of the primary reasons this Court also requires that all class action settlements be approved by the Court.[19]

---

[17] 8 *Del. C.* § 262(k).

[18] *Ala. By-Prods. Corp.*, 657 A.2d at 261 (discussing the "policy behind the Section 262(k) court approval requirement" is to avoid the "vice of selling out the class."). *See also In re Appraisal of Dell Inc*, Consol. C.A. No. 9322 (June 27, 2015) (TRANSCRIPT) at 7 ("But what I need you to do, because this is 'in the nature of' a class action, is to at least reach out to the Magnetar folks and the other folks on the verified list and let them know that this offer has been made.").

[19] *Ala. By-Prods. Corp.*, 657 A.2d at 260 (stating "[t]he court approval requirement ensures that a shareholder does not settle out of the class suit at a premium, thereby abandoning the prosecution of the action to the detriment of other class members."). The fact that appraisal petitioners have no right to "opt out" of the resolution of a consolidated appraisal action does not render the procedural guidance to be drawn from this Court's management of class action litigation any less apt. Indeed, our courts will certify a class as a non-opt-out class under Court of Chancery Rule 23(b)(1) even where the class is entitled to only monetary relief in cases where all members of the class are similarly situated with respect to issues of liability and damages and share identical incentives. *See Turner v. Bernstein*, 768 A.2d 24, 30–31 (Del. Ch. 2000) (citing *In re Mobile Commc'ns Corp. of Am., Inc. Consol. Litig.*, 1991 WL 1392, at *15 (Del. Ch. Jan. 7, 1991)). Therefore, there is nothing unusual or unjust about requiring Brookdale to accept the appraisal value determined in an appraisal proceeding prosecuted by Court-appointed lead counsel, who have the same incentive as Brookdale's preferred counsel to maximize the recovery for all petitioners.

The similarity of the procedural form and the representative character of class actions and appraisal litigation is a reflection that the named plaintiff/petitioner is standing in the shoes of others who have similarly vested, if not identical, interests.

Second, as noted, Section 262(j) incorporates basic common-fund principles with respect to the allocation of counsel fees among the appraisal class at the conclusion of the litigation.[20] In this regard, the appraisal statute itself implicitly acknowledges that appraisal litigation is in the nature of a class action.[21]

Third and finally, I note that the fiduciary relationship that exists between court-appointed lead counsel in a class action and all members of the class also exists between court-appointed lead counsel in an appraisal action and all other stockholders entitled to appraisal.[22] After the Court enters the order consolidating the actions and appointing G&E as lead counsel, G&E will owe duties of care and loyalty to Brookdale.[23] Brookdale's interests will be protected by G&E along with the interests of all stockholders entitled to appraisal.

---

[20] *Dell*, 2016 WL 6069017, at *3.

[21] *Ala. By-Prods. Corp.*, 657 A.2d at 260.

[22] *Id*; *Dell*, 2016 WL 6069017, at *3 ("[R]emember, part of what you do when you are an appraisal claimant is you take on a fiduciary role . . . to the people who didn't file because there are members of the appraisal class who haven't filed petitions, and they're entitled to rely on the actions of those who did file.").

[23] *In re M & F Worldwide Corp. S'holders Litig.*, 799 A.2d 1164, 1175 (Del. Ch. 2002) (stating that in the context of representative litigation "counsel owed a duty to act in good faith on behalf of all intended beneficiaries of the representative action, and not simply at

D. **The Hirt Factors Support the Appointment of G&E as Lead Counsel**

Having determined that this consolidated appraisal action is in the nature of a class action, it is appropriate to look for guidance to this Court's practices regarding the management of class action litigation. As an initial matter, the Court will exercise its discretion to appoint lead counsel in a class action when multiple complaints have been filed and the Court determines that it will be more effective for the class and more efficient for the management of the litigation to create a structure where the class speaks with the clear voice of unified advocates rather than the cluttered and potentially disingenuous voices of several competing advocates.[24]

Here, it is evident that Brookdale and the Majority Petitioners, and A&G and G&E, notwithstanding their efforts to coordinate, will struggle to speak with a

---

the direction of the named plaintiffs."); *Id.* at n. 34 ("By now it is well established that by asserting a representative role on behalf of a proposed class, representative plaintiffs and their counsel voluntarily accept a fiduciary obligation towards members of the putative class."); *In re Agent Orange Prod. Liability Litig.*, 800 F.2d 14, 18 (2d Cir. 1986) ("the class attorney's duty does not run just to the plaintiffs named in the caption of the case; it runs to all of the members of the class."); *Parker v. Anderson*, 667 F.2d 1204, 1211 (5th Cir. 1982) ("The duty owed by class counsel is to the entire class and is not dependent on the special desires of the named plaintiffs.").

[24] *In re Del Monte Foods Co. S'holders Litig.*, 2010 WL 5550677, at *6 (Del. Ch. Dec. 31, 2010) (stating the when appointing lead counsel "[t]he Court's overriding goal is establish a leadership structure that will provide effective representation.").

unified voice during this litigation.[25]  Indeed, I detect a significant risk that the two camps may present conflicting positions that could undermine the credibility of the petitioners' overall presentation.  I am also troubled by Brookdale's absolute refusal to consider an arrangement where it will contribute to the compensation of G&E at the end of the litigation for its share of any common benefit that G&E might bring to all stockholders seeking appraisal.  While I have no doubt that A&G would make meaningful contributions to the litigation effort, even the structure that Brookdale proposes would have G&E tackling the lion's share of the work.  Brookdale's blanket refusal to agree to compensate G&E for even a portion of this work smacks of free riding.  Under these circumstances, I am satisfied that the appointment of lead counsel is appropriate.

When appointing lead counsel in the class action context, this Court looks to the factors set forth in *Hirt v. U.S. Timberlands Service Co.*[26]  They are:

- The quality of the pleading that appears best able to represent the interests of the shareholder class and derivative plaintiffs;

- [T]he relative economic stakes of the competing litigants in the outcome of the lawsuit (to be accorded "great weight");

---

[25] I note that A&G and G&E have worked well together in the past in appraisal litigation. I suspect, in this case, that the disagreements are more client-driven than counsel-driven.
[26] 2002 WL 1558342, at *2 (Del. Ch. July 3, 2002) (drawing heavily from Chancellor Chandler's decision in *TWC Tech. Ltd. P'ship v. Intermedia Commc'ns, Inc.*, 2000 WL 1654504, at *4 (Del. Ch. Oct. 17, 2000)).

- [T]he willingness and ability of all the contestants to litigate vigorously on behalf of an entire class of shareholders;

- [T]he absence of any conflict between larger, often institutional, stockholders and smaller stockholders;

- [T]he enthusiasm or vigor with which the various contestants have prosecuted the lawsuit; [and]

- [T]he competence of counsel and their access to the resources necessary to prosecute the claims at issue.[27]

The unique facts of each controversy over the appointment of lead counsel will often cause the Court to dwell on certain *Hirt* factors while glossing over others. This "nuanced and case-specific" approach helps to ensure that the Court establishes "a leadership structure that will provide effective representation" and best serve the interests of the petitioners.[28]

While A&G has not moved to be appointed lead counsel, and so this is not a traditional scenario where the Court is selecting lead counsel among several firms vying for lead counsel status, application of the *Hirt* factors strengthens the conclusion that appointing G&E as lead counsel is appropriate in this case. I will address the *Hirt* factors that have informed my decision in ascending order of relevance.

---

[27] *Id.* (footnotes and internal quotation marks omitted).

[28] *In re Delphi Fin. Gp. S'holder Litig.*, 2012 WL 424886, at *1 (Del. Ch. Feb. 7, 2002) ("[E]ach factor is given weight only to the extent that it bears on the ultimate question of what is in the best interests of the plaintiff class.").

16

*First*, the quality of the pleadings is not a factor that weighs in favor of either counsel. Given that this is an appraisal action, the pleadings are relatively simple and fairly standardized. *Second*, the enthusiasm and vigor in the prosecution of the action thus far does not favor or disfavor G&E. All counsel have demonstrated enthusiasm and vigor in the prosecution of their respective petitions for appraisal and I am certain that both G&E and A&G would continue to represent their clients with skill and appropriate energy. *Third*, I detect no conflict in the incentives that both Brookdale and Majority Petitioners have to seek the highest value they can achieve for their Rouse shares. *Fourth*, the competence of counsel weighs in favor of G&E. There is no doubt that all counsel involved in this dispute are highly competent and among the best of the lawyers who regularly prosecute appraisal actions in this Court. Nevertheless, G&E's track record in appraisal litigation is exceptional. *Fifth*, the relative competing economic stakes of the litigants is a factor that heavily favors G&E. The Majority Petitioners are the beneficial owners of over 75% of the shares entitled to appraisal. While both camps of petitioners have large economic stakes that would incentivize them to participate actively in the litigation, the difference between the economic stakes of the two camps is large enough to "demonstrate a substantial relative difference" under *Hirt*.[29] The Court must give this factor "great weight."[30]

---

[29] *Wiehl v. Eon Labs*, 2005 WL 696764, at \*3 (Del. Ch. Mar. 22, 2005).

## III.  CONCLUSION

Because I have concluded that the appointment of lead counsel in this action would not deprive Brookdale of its statutory right to participate fully in the proceedings, that the appointment of lead counsel is appropriate because appraisal proceedings are in the nature of class actions, that Brookdale's concerns are mitigated by the fiduciary and ethical duties to which it will be owed by lead counsel and that the *Hirt* factors favor the appointment of G&E, the Motion is **GRANTED**.  An implementing order will be entered shortly.

---

[30] *Hirt*, 2002 WL 1558342, at *2.